GRIFFITH *v.* MAXFIELD.

Opinion delivered March 13, 1897.

SALE OF LAND—SUFFICIENCY OF TITLE.—Under a contract to convey "a good and sufficient title in fee simple," a vendee is entitled to receive a marketable title to the bargained property unclouded by a reasonable doubt as to its sufficiency to enable him to hold the property in fee simple.

SAME—WHEN VENDEE MAY REFUSE TITLE.—The fact that lands of an intestate were purchased at administrator's sale partly for the benefit of the administrator is such a defect in the title as justifies a subsequent purchaser in refusing to accept it under an agreement to furnish him "a good and sufficient title in fee simple," especially where minor heirs of the intestate are interested in the lands.

SAME.—An outstanding dower interest which is not barred by adverse possession for the statutory period is such a defect in the title as will justify a purchaser entitled to receive a "good title in fee simple" in refusing to accept such title.

SAME—RESCISSION—SUFFICIENCY OF COMPLAINT.—The failure of a complaint for rescission of a contract of sale of land to tender the rents and profits derived from the land is not a ground of demurrer where it does not appear from the complaint that plaintiff received any rents and profits.

Appeal from Independence Circuit Court in Chancery.

RICHARD H. POWELL, Judge.

*Yancey & Fulkerson* for appellant.

The complaint stated a good cause of action. The deed tendered did not convey "a good and sufficient title in fee simple," as conditioned in the bond for title, for the following reasons: (1) George Maxfield's widow was entitled to dower. Her husband and Theodore Maxfield were tenants in common. Sand. & H. Dig., sec. 2520. It does not appear that the widow was barred by seven years' adverse possession. 30 Ark. 640; 48 *id.* 277. And if Theodore Maxfield had acquired the widow's interest by adverse possession, this is not such a title as the bond contemplated. It must be a *marketable* title. Waterman, Spec. Perf. sec. 412, and note, 411, 410. (2) The sale of the interest of the children of George Maxfield was void. Sand. & H. Dig., sec. 109; 49 Ark. 242; 54 *id.* 635; 42 *id.* 28; 8 Wheat. 421; Hempst. 225; 20 Ark. 321; 23 *id.* 622; 26 *id.* 445; 30 *id.* 44; 33 *id.* 575; 34 *id.* 575. Appellant cannot be compelled to accept a title based on a fraudulent sale, and then be remitted to a suit on the covenants of warranty. Treating this as a collateral attack on the probate order of sale and confirmation, the rule that a judgment cannot be collaterally attacked, applies only to parties and privies, and does not extend to strangers. 12 Vt. 619; 1 Black, Judgm. secs. 260,

293; Freeman, Judgm. sec. 336. In the event of an eviction, appellant could only recover, on a suit on the warranty, the purchase money and interest, but would lose all his improvements. 43 Ark. 439. (3) The vendee has a right to demand such title as he contracted for, clear of doubt or suspicion. 11 Ark. 75; 21 *id.* 239; 44 *id.* 145. See also 44 Ark. 197; 51 *id.* 333; 60 *id.* 42; 7 *id.* 154; Rawle, Cov. Title (5 Ed.), 41.

*H. S. Coleman* for appellee.

The bill was properly dismissed, as plaintiff nowhere offered to "do equity"; he remained quietly enjoying the rents and profits, with full notice prior to purchase. A judicial sale was made of Geo. Maxfield's interest, and this put the statute of limitation to running. 22 Ark. 263; 29 *id.* 650; 33 *id.* 294. A demurrer only admits such allegations as are material and well pleaded. Freeman on Judgments, sec. 336, wholly fails to sustain the appellant's contention that he is in a situation to collaterally attack the probate judgment. How was he defrauded by that judgment? The widow and heirs of George Maxfield have never claimed to own a half interest in the land. The deed by the administrator to appellee is regular on its face, contains all necessary recitals, and conveys a complete title. Sand. & H. Dig., sec. 725. The members of the firm of Theodore Maxfield & Bros. had no interest in the land after the execution of the bond for title and the payment of the purchase money. 13 Ark. 533; 27 *id.* 61; 27 *id.* 160; 27 *id.* 632; 39 *id.* 375; 36 *id.* 456. The sale was before the death of either of the members of the firm, and the legal title was in Theodore Maxfield.

Sufficiency of title in sale of land. BATTLE, J. Upon the payment of the sum of $600, and 6 per cent. per annum interest thereon from the 26th day of August, 1889, the appellant, Griffith, was entitled to a marketable title to the bargained property

unclouded by a reasonable doubt as to its sufficiency to enable him to hold the property in fee simple. His vendors agreed to convey to him such a title upon the condition stated, and he was not bound to take anything less.

In *Vought* v. *Williams*, 120 N. Y. 253, the court said : " It is an established principle of law that every purchaser of real estate is entitled to a marketable title free from incumbrance and defects, unless he expressly stipulates to accept a defective title. * * * * A marketable title is one that is free from reasonable doubt. There is reasonable doubt when there is uncertainty as to some defects appearing in the course of its deduction, and the doubt must be such as affects the value of the land, or will interfere with its sale. A purchaser is not to be compelled to take property the possession of which he may be compelled to defend by litigation. He should have a title that will enable him to hold his land in peace, and, if he wishes to sell it, be reasonably sure that no flaw or doubt will arise to disturb its market value." *Dobbs* v. *Norcross*, 24 N. J. Eq. 327; *Swayne* v. *Lyon*, 67 Pa. St. 436; *Yeates* v. *Pryor*, 11 Ark. 76; *Gill* v. *Wells*, 59 Md. 492; *Close* v. *Stuyvesant*, 132 Ill. 607; *Butts* v. *Andrews*, 136 Mass. 221; Waterman, Specific Performance, sec. 412.

It is said in Sugden on Vendors, p. 385, that, to enable equity to enforce a specific performance against a purchaser, "the title to the estate ought, like Cæsar's wife, to be free from suspicion." This statement is not accurate. To defeat the enforcement of a specific performance against a purchaser, there must be something more than mere speculation, theory or possibility. The doubt as to the sufficiency of the title must be "such as would and ought to induce a prudent man to pause and hesitate; not based on captious, frivolous and astute niceties, but such as to produce real *bona fide* hesitation in the mind of the chancellor."

"In *Pyrke* v. *Waddingham*, 10 Hare, 1, which was a bill by a vendor for specific performance" [we quote from *Close* v. *Stuyvesant*, 132 Ill. 618], "the question as to title turned upon the construction to be given to a particular will, and the vice chancellor was strongly of the opinion that the title was good; but, as he was unable to found his opinion upon any general rule of law, or upon reasoning so conclusive as to satisfy him that other competent persons might not entertain a different opinion, or that the purchaser taking the title might not be exposed to substantial, and not merely idle, litigation, he refused a decree of specific performance. It was there held that a doubtful title which a purchaser will not be compelled to accept is not only a title upon which the court entertains doubts, but includes also a title which, although the court has a favorable opinion of it, yet may reasonably and fairly be questioned in the opinion of other competent persons; for the court has no means of binding the question as against adverse claimants, or of indemnifying the purchaser, if its own opinion in favor of the title should turn out not to be well founded; if doubts as to the title arise upon a question connected with the general law, the court is to judge whether the general law on the point is or is not settled; and if it is not, or if the doubts as to the title may be affected by extrinsic circumstances, which neither the purchaser nor the court can satisfactorily investigate, specific performance will be denied. The rule thus laid down as to the species of doubt which ought to prevent a court from enforcing specific performance was adopted in the later case of *Mullings* v. *Trinder*, L. R. 10 Equity, 449." See *Butts* v. *Andrews*, 136 Mass. 221.

In *Close* v. *Stuyvesant*, 132 Ill. 607, the plaintiff filed a bill in chancery to enforce the specific performance of a contract to exchange lands. The lands which

the plaintiff agreed to convey in exchange were entered under the pre-emption and homestead laws of the United States. The defendant alleged by way of defense that the several parties who made the entries of the lands did so by the procurement and for the benefit of the plaintiff; and "that they resided on said lands only for a sufficient time to make a merely colorable and formal compliance with the law, and then filed their final proofs, and obtained certificates of entry, and immediately conveyed the tracts entered by them, respectively, to the plaintiff, in pursuance of a previous agreement and undertaking between him and them, made prior to the date of the final proof." The court said : "If the circumstances under which said entries were made were such that, under the law as it is administered by the General Land Office, they are liable to rejection and cancellation, that liability alone is doubtless such a defect of title as a court of equity ought not to compel the defendant to assume."

In view of the law as stated, was the deed tendered by the appellees to the appellant a sufficient compliance with their contract? They and Edward Maxfield and John Fred Maxfield composed the firm of Theodore Maxfield & Bros. As such firm, they sold to appellant a town lot for a stipulated sum, and agreed to make him "a good and sufficient title in fee simple" to the lot when he paid the purchase money, which he did. Appellees tendered a deed executed by Theodore Maxfield and his wife, by which they undertook to convey the lot to him. He refused to accept the deed, "because [neither] at the time said deed was executed, nor at any other time, was or is Theodore Maxfield, grantor in said deed, seized of the title to the land mentioned in said deed, * * * because said land was a part of a certain tract of land conveyed on January 5, 1872, by John Kingsberry to George R. Maxfield and * * * Theodore

*When vendee may refuse deed.*

Maxfield, who owned and occupied the same as tenants in common, and were so occupying said land on the 24th day of March, 1887, when the said George R. Maxfield died intestate, leaving surviving him his widow, Sallie Maxfield, and his children * * * Leah, Fannie, Nellie and Cora, who are now living, and all minors, save and except Leah, who is twenty years of age;" and because Sallie Maxfield, as the widow of Geo. R. Maxfield, is entitled to the one-third part of the lands of which her husband was the owner, of which the lot purchased is a part, and her dower has never been assigned; and for the additional reason that Geo. R. Maxfield was the owner of one undivided half of said lot. Soon after his death, appellee, Charles W. Maxfield was appointed administrator of his estate. In August 1887, he, as such administrator, procured an order to sell certain lands of his intestate's estate, the said lot being a part, to pay debts, and on the 30th of September, 1887, sold the same to Theodore Maxfield, for the benefit of the firm of Theodore Maxfield & Bros., of which the administrator was a member. On the 9th of January, 1888, the administrator conveyed the lands to Theodore Maxfield, who conveyed the same to the administrator and the other members of said firm. Appellant has been notified that this sale is fraudulent and void, and that the widow and heirs of George R. Maxfield are claiming one-half of the lot which was sold to him.

According to this statement of facts, the sale by the administrator is subject to be set aside upon the application of the heirs of George R. Maxfield, deceased. This is a defect in the title of appellees to the lot which is reasonably calculated to impair its market value, and interfere with its sale, and expose the holder thereof to litigation. If it be conceded that Theodore Maxfield could convey the title acquired at the administrator's sale, this defect would still exist. The fact that the lot

was purchased in part for the benefit of the administrator would still render the sale voidable. The minority of the heirs of George R. Maxfield, except one, makes the defect more injurious, and the title more objectionable.

Another defect in the title tendered by appellees is the dower interest of the widow of George R. Maxfield, deceased, in the lot. Appellees insist that this defect has been cured by the statute of limitations. But there is nothing in the complaint to show that the widow is barred from recovering her dower by an adverse possession which continued for the statutory period.

The title tendered to appellant was not such as he contracted for, and he was not bound to accept it. *Sufficiency of complaint seeking re-scission.* Appellees have not performed the conditions upon which he paid the purchase money; and he is, therefore, entitled to specific performance or recission of his contract, according to the prayer of his complaint. But appellees insist that he is not entitled to a recission until he offers to restore the rents and profits derived from the lot, and he has failed to make such a tender in his complaint. This is true.. But there is nothing in the complaint that indicates that he received any rents and profits or used the lots. The complaint shows a cause of action, and the demurrer should have been overruled.

The decree of the circuit court is, therefore, reversed, and the cause is remanded with instructions to the court to overrule the demurrer.