WRIGHT v. BOLTZ.

Opinion delivered October 26, 1908.

1. CANCELLATION OF INSTRUMENTS—FRAUD.—A vendee of land seeking a cancellation of the sale on account of alleged false representations of his vendor must show that the representations induced

him to purchase, that he relied upon them, and had a right to rely upon them in belief of their truth. (Page 570.)

2. SAME—OPPORTUNITY OF KNOWLEDGE.—Misrepresentations of the agent of a vendor of land as to the timber growing upon the land and as to its value and productiveness will not constitute ground for cancelling the sale if the vendee had opportunity to examine the timber and the crops on the land, even though to some extent he was influenced by the agent's representations. (Page 571.)

Appeal from White Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

*Cypert & Cypert,* for appellant.

In order to defeat the collection of the purchase money in this case, three things must concur:

1. Fraud must have caused an injury, *i. e.* the price must have been grossly inadequate.

2. The fraud must have been material to the contract, and must have been the inducement to the contract.

3. The injured party must have relied on the fraudulent statements, and had a right to rely solely upon them in full belief of their truth. 47 Ark. 148; 71 *Id.* 91. A thorough examination of the place was made, but, if not, ample opportunity was given, and the purchaser is charged with knowledge of every defect if by reasonable diligence he might have learned the true value. 80 U. S. 679; 38 Ark. 334; 74 *Id.* 231. Mere expressions of opinion as to value are not misrepresentations, especially where a party had legal opportunity to examine the property, and where defects, if any, are patent to any one. 2 Otto, 1-10; 29 Cal. 172; 28 Pac. Rep. 880.

*Rachels & Johnston,* for appellee.

1. The misrepresentations made by Wright, the vendor, as to material facts justify a court of equity in allowing the vendee recoupment in a suit to collect the purchase money. These misrepresentations were false, deceptive and fraudulent, peculiarly within the vendor's knowledge; they were material, and the vendee had a right to rely on them. 51 Kans. 355; 54 *Id.* 579, 436; 14 Mich. 108; 25 *Id.* 78; 31 *Id.* 36; 32 *Id.* 305; 8 N. W. 74.

2. While it is true that equity will not relieve a party from the consequences of his own inattention and carelessness (11

Ark. 66), yet when the representation is of a fact that has nothing to do with opinion, and is peculiarly within the knowledge of the party making it, the one receiving it has the absolute right to rely on its truth, though the means of ascertaining its falsity were fully open to him, and it does not lie in the mouth of the declarant to say it was folly in the other party to believe him. 2 Pom. Eq. § 85; 32 N. Y. 275; 103 Mass. 501; 19 Minn. 32; 19 Ind. 130; 28 *Id.* 170; 47 Ark. 339; 58 Cal. 234; 1 Hun 303; 42 Neb. 86; 37 Mich. 55; 60 Me. 532; 59 N. H. 41; 29 N. J. Eq. (2 Stew.) 257; 46 N. H. 510; 71 Ark. 90.

3. Fraud and fraudulent representations, when they relate to some matter collateral to the title and right of possession, such as the location, quantity, quality, condition and privileges, or the rents and profits derived, etc., are undoubtedly grounds of recovery or recoupment. 130 U. S. 1054; 2 L. Raym. 1118; 3 B. & C. 223; 13 Johns. 396; 23 Wend. 260; 47 Miss. 4, 21; 135 U. S. 246; 82 Ark. 20.

McCULLOCH, J. Appellant owned a tract of land in White County, Arkansas, containing 861.55 acre farm and timber land, and sold it to appellee for $17,600, taking in exchange a farm in Illinois owned by appellee at the estimated value of $7,000, which was credited on the purchase price of the Arkansas land. There was a mortgage on the land for $6,750 executed by appellant which appellee assumed, and that, too, was credited on the purchase price. The balance of the purchase price is evidenced by notes executed by appellee, which are recited in the deed and constitute a lien on the land conveyed.

Appellant instituted this suit in the chancery court of White County to enforce his lien on the land, as vendor, for unpaid accrued interest on the notes and for taxes on the land which he had paid in order to protect it from sale; and appellee filed his cross-complaint against appellant, seeking to cancel the sale on the alleged ground of fraudulent misrepresentation on the part of the vendor and his agent concerning the value of the land and quantity and value of timber thereon. The chancellor granted the relief prayed in the cross-complaint.

Appellee, up to the time that he purchased the Arkansas land, resided in Clay County, Illinois, where he owned and occupied a small farm. Appellant lived in Missouri, but owned

the Arkansas land, and placed it for sale in the hands of a real estate agent or broker named Martin at Searcy, Arkansas, the land being situated only a few miles distant from that place. Correspondence began in February, 1904, between appellee and Martin concerning the sale of the land, and continued up to the consummation of the trade which occurred on November 23, 1904, at a meeting in St. Louis, appointed for that purpose between appellant and appellee.

Appellee came to Arkansas in March, 1904, and looked at the land, and returned again in September, 1904, when he spent two or three days and nights on the place inspecting it. Appellant met him there by appointment.

The allegations of the cross-complaint concerning misrepresentations made by appellant and his agent, Martin, take a very wide range, including not only matters affecting the lands sold, but also the manifold superior advantages afforded to those who are fortunate enough to live in this State, and particularly in the locality where these lands are situated. The chancellor, however, based his decree on a finding that misrepresentations were made concerning the quantity and value of the timber on the lands. We are of the opinion that the decree is not correct.

It is well settled that a vendee of land seeking a cancellation of the sale on account of alleged false representations of his vendor must show that the representations induced him to purchase, that he relied upon them and had the right to rely upon them in belief of their truth. *Yeates* v. *Pryor,* 11 Ark. 58; *Matlock* v. *Reppy,* 47 Ark. 148; *Neely* v. *Rembert,* 71 Ark. 91.

This court in *Yeates* v. *Pryor, supra,* laid down the rule that "misrepresentation, in order to affect the validity of the contract, must relate to some matter of inducement to the making of the contract, in which from the relative position of the parties and their means of information the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other on account of his superior information and knowledge in regard to the subject of the contract; for, if the means of information are alike accessible to both, so that, with ordinary prudence or vigilance, the parties might respectively rely upon their own judgment, they must be presumed to have done so."

And this court in *Neely* v. *Rembert, supra*, speaking of the rule charging a purchaser of land who has had an opportunity to inspect for himself with "all the knowledge which he might have obtained had he pursued the inquiry to the end," said: "One ground of the rule is stated to be the practical impossibility, in any judicial proceeding, of ascertaining exactly how much knowledge a party who has examined before purchase has obtained by his inquiry, and the opportunity which a contrary rule would give to a party of repudiating an agreement or other transaction fairly entered into, with which he had become dissatisfied."

The evidence discloses the fact that appellee twice visited the lands for the purpose of inspecting them in contemplation of a purchase, that he had abundant opportunity to examine the lands and timber, and did examine them. It is not claimed that any definite representation was made to him as to the quantity or kind of timber on the land. He merely states: "Mr. Martin said there was enough on the place to pay for it, and Mr. Wright said in St. Louis there was enough timber on the place to pay half of the purchase money." These statements were obviously only expressions of opinion, not intended to be taken literally, as appellee knew that less than half of the land was unimproved, and could not have relied on the statement that the timber was worth the whole of the purchase price or even half of it.

The same may be said of the alleged misrepresentaton concerning the value and productiveness of the land. At least one of his visits to the land was during the crop season, and he was invited to make the visit in order to see the land and judge of its productiveness. That he availed himself of the opportunity shows that he traded on his own judgment, rather than that of the vendor and his agent. That he was influenced to some extent by the too favorable opinion expressed by the agent concerning the value of the land and its future possibilities is very probable, but that is not sufficient to justify a court of equity in setting aside the contract of sale.

Upon the whole, we think the evidence does not entitle appellee to the relief sought. The decree is therefore reversed, and the cause is remanded for further proceedings and with directions to enter a decree in favor of appellant for the amount found to be due him.

HART, J., disqualified.