## Leroy v. Harwood.

## Opinion delivered June 28, 1915.

1. Vendor and purchaser—contract of purchase—good title.—Where a contract for the sale of land provided that the vendor would furnish to the purchaser, a title satisfactory to the purchaser's attorney, the purchaser is not bound to accept a title which the purchaser's attorney considered doubtful.

2. Vendor and purchaser—contract of purchase—good title.—Under a contract to convey land, the vendor was the surviving partner of a firm, to whom the land in issue had been conveyed as trustee for his partner, in order to secure a debt due the firm; after the partner's death the land was deeded to his administrator, and without notice to the administrator, heirs or creditors of deceased, the probate court ordered a conveyance to the surviving partner, and later ordered the surviving partner and administrator to join in executing a conveyance to the purchaser in the contract; Held, the purchaser having deposited money to be paid when a deed was accepted, was entitled to recover back the same, the title offered by the vendor being, at least, doubtful, and the purchaser's attorney, in rejecting said title, can not be said to have acted arbitrarily.

4. Cancellation of deeds—remedy of purchaser—amendment by vendor.—Where the vendor, under a contract to sell land, failed to comply with the contract, to make a title that the purchaser's attorney would approve, and the purchaser has rescinded the trade, the vendor can not thereafter amend his answer, bring in new parties, and seek to prove that he might thereafter be able to make a good title.

Appeal from Garland Chancery Court; *Jethro P. Henderson,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

This suit was instituted by the appellee against the appellant to rescind and cancel a contract which appellee alleged was entered into between the parties, and which is as follows: "It is agreed by and between Joe Leroy and Undine Harwood wherein the said Joe Leroy agrees to sell to the said Undine Harwood northwest quarter of the northeast quarter of section 14, township 3 south, of range 19 west, lying in Garland County, Arkansas, for a consideration of twenty-five hundred dollars in cash. It appearing that certain claims probated against the estate of M. Soncini, deceased, are now a lien against the said

property, it is agreed that the said Undine Harwood will pay to the Citizens National Bank the said sum of money to be paid to the said Joe Leroy when the title to the said property is cleared satisfactory to her attorney, Jas. S. McConnell, and to be paid at his direction. The said Joe Leroy agrees to deliver possession of the said property immediately and to execute a deed to be held in escrow until the title is so satisfied and cleared as aforesaid and same to be delivered to the said Undine Harwood when her said attorney passes the said title. The said Joe Leroy agrees that in case he fails or refuses to cause the said claim to be satisfied he will forfeit and pay, and now deposits with the said bank the sum of $200 as a forfeit to pay to the said Undine Harwood for her trouble and expense in occupying the said property, and she, the said Undine Harwood, agrees to deliver up possession of the said property upon demand if this deal is not finally consummated." Signed by the parties May 27, 1914.

Appellee alleged a compliance with the contract on her part by the depositing with the Citizens National Bank the sum of $2,500, which was to be paid to the appellant when he had performed the contract on his part. She alleged that the appellant had failed to deposit the $200 which he was required to do under his contract, and "had failed and neglected to furnish or offer to furnish to the plaintiff a conveyance to the said property, conveying to the plaintiff a title satisfactory to her said attorney, Jas. S. McConnell;" that upon such failure on the part of the appellant, she had made demand on the bank for the return of the $2,500, and that the bank had refused to return the same. She therefore prayed that the agreement be rescinded and cancelled, and that the bank be required to return the $2,500 with interest.

Appellant answered, admitting the contract and the deposit of the $2,500 with the bank by the appellee, as alleged, but denied that he had neglected and refused to deposit the $200. He alleged that he offered to deposit the $200 in the bank when appellee or her agent took possession of the property as contemplated in the agreement;

that appellee had refused to take possession of the property and declined to pursue the agreement further, and had notified the appellant. He denied that he had failed to comply with the terms of the contract requiring him to furnish the appellee a conveyance of title satisfactory to her attorney. He alleged that he deposited in escrow a warranty deed to be delivered to the appellee, which deed conveyed a fee simple title unencumbered, and that appellee's attorney arbitrarily refused to be satisfied with the deed. He set up that he had instructed the bank not to return the $2,500 to the appellee for the reason that he had complied with the terms of the agreement on his part, and was himself entitled to the $2,500, and, by way of cross-complaint, he asked that the bank be ordered to pay him the $2,500. He exhibited with his answer deeds that he had tendered to the appellee.

The bank delivered the money and papers that had been deposited with it in court, and was discharged.

The appellee testified that at the time the agreement was entered into, the appellant represented that he could make a clear title to the land; that something was said about claims probated against the estate of M. Soncini, and that she agreed to pay the $2,500, and appellant was to give her a clear title. Appellant would not deposit the $200 in the bank, according to his contract. Appellee complied with the contract on her part by depositing the $2,500 in the bank.

On June 22, 1914, appellee, by letter, demanded of the appellant to be released from the contract, and demanded the return of the $2,500, stating as her reason for so doing that appellant had failed, on his part, to comply with the contract. She stated that he had failed to make a title that was clear, and that her attorney was not satisfied with it. She testified that it was expected when the agreement was executed that appellant would have a limited time in which to satisfy and clear the title; that in case he did not do so, the $200 was to be paid to her for her trouble and expense in occupying the property. She relied upon her attorney's judgment and opinion as to ap-

pellant's being able to convey a good title. Her attorney advised her that the deeds placed by the appellant in the bank did not give her a clear title. The failure of the appellant to deposit the $200 was not the reason her attorney urged that the title was not good. .

It was shown by the appellee, and also her brother, that the latter was present at the time the agreement was entered into between appellee and appellant, and that appellant represented that he would make a good title that would be satisfactory to her attorney. Appellee's brother was to occupy the place, but did not do so because the attorney informed her that appellant could not make her a clear title.

Appellee's attorney testified substantially as follows: Appellant and appellee were negotiating for the sale of a certain tract of land, and were in a hurry to close the transaction, and asked him for his opinion on an abstract that had been presented by the appellant; that upon examining the abstract, he was in doubt about the title, but advised the appellee that he believed an additional deed from the administrator of the estate of Mario Soncini to appellant, for which a petition had been filed, would enable the appellant to make appellee a good deed, inasmuch as appellant represented that he was a partner of Mario Soncini, deceased; that acting upon this belief and opinion, the contract was drawn up by him and entered into between the parties in order to enable appellant to take such steps as would give appellee title to the property, all of which appellant represented that he could and would do. After the agreement was entered into witness made a complete investigation of all the records referred to in the abstract of title that had been presented by appellant and the records of the Garland County Probate Court; that the abstract showed that there was of record on the 28th day of April, 1913, a deed of trust on the lands described in the contract, executed by Z. J. Mooney and wife to Joe Leroy as trustee for Mario Soncini. The consideration named in the deed was $1,550, bearing interest. The abstract showed that Mark Brizzolara, as administrator

of the estate of Mario Soncini, petitioned the probate court to allow him to compromise the debt due from Mooney and to accept a conveyance of the property as administrator, and that an order was entered showing that the petition was granted and the administrator was authorized to accept the conveyance in settlement of the debt due by Mooney to the estate of Soncini. The abstract also contained an order of the probate court directing the administrator of the estate of Soncini to execute to Joe Leroy a conveyance of said property. It also showed that Joe Leroy petitioned the probate court, stating the partnership existed between him and M. Soncini, and asked "that the administrator be authorized to execute a conveyance of the property to him as the surviving partner; that the administrator of the estate of Soncini also petitioned the probate court for an order directing him, as such administrator, to execute the deed of conveyance to Leroy as the surviving partner of Soncini, setting up that the debt from Mooney was a debt of the partnership; that the order of the Garland Probate Court was accordingly made as above mentioned, directing the administrator to make the deed to appellant as surviving partner; that the records of the Garland County Probate Court examined by the witness showed that there were five or six thousand dollars worth of claims probated against the estate of M. Soncini, and that the records did not show that these claims had been satisfied. Witness testified that after making the investigation of the above records and examining the authorities with reference to the property of estates and the property of partnerships, he was convinced that there was no way by which he could ascertain from the records whether the property was really the property of the partnership or whether it was the property of the estate of M. Soncini. He ascertained that Soncini had a widow and two minor children who were interested in his estate. After making these investigations, on June 8, 1914, he wrote appellant concerning the sale of the property to appellee, notifying him that as the attorney for appellee, he had come to the conclusion that the deed executed by the appellant and placed in es-

crow with the Citizens National Bank would not convey the title to the property. In this letter, he states: "There is so much conflict in the orders of the probate court and the rights of yourself and the rights of the heirs of M. Soncini, these being minors, that I do not think that you have legal right to convey the title, and sooner or later there would be litigation over it. So I have advised Mrs. Harwood that my former opinion as to the title conveyed by the deed executed is erroneous. Believing as I do about the title, I can not conscientiously direct the payment of the purchase price, and have advised her brother by wire not to incur any expense in preparing to move here."

He also advised the appellee that the deed delivered to the Citizens National Bank in escrow by the appellant at the time she deposited her money there would not convey her the title in fee simple, and that if she accepted it, she would have a clouded title. Witness also prepared a notice, and sent the same to appellant and to the bank, to the effect that he would not approve the title.

After this appellant petitioned the probate court to authorize the administrator of the estate of M. Soncini to execute a conveyance to the appellee, which order was granted, and Mark Brizzolara, as administrator of the estate of Soncini, was ordered to execute the deed and deliver the same to the Citizens National Bank. Witness, on behalf of Mrs. Harwood, demanded payment of the $2,500 by the bank. At the time the final account of the administrator had been filed, but had not been approved, and the claims which had been probated against the estate of Soncini had not been completely satisfied by the records of the probate court.

The appellant testified in his own behalf substantially as follows: He was associated in business with M. Soncini in his lifetime as a partner. One Mooney became indebted to the firm in the sum of $1,530, and gave a mortgage on the land described in the contract to secure the same. Mooney did not pay the indebtedness, and appellant took a deed to the land for it. His testimony and the

exhibits thereto showed that the deed here referred to was made by Mooney to the administrator of the estate of M. Soncini, deceased, through a petition of the administrator and an order of the probate court authorizing the administrator to accept a deed from Mooney "in full settlement of the indebtedness due by the said Mooney to the estate of said Mario Soncini."

The testimony of appellant and the exhibits thereto also show that on the petition of the appellant to the probate court, the probate court made the following order: "That said Mark Brizzolara, as the administrator of said M. Soncini, execute to Joe Leroy as surviving partner of the said firm of Soncini & Leroy, a deed to the above described land." (That is, the land described in the contract.)

Witness further testified that the mortgage of Mooney under which he acquired the land was made in the name of M. Soncini; that Soncini represented Soncini & Leroy. He was trustee in the deed of trust and took possession of the property when the deed was delivered. He made a warranty deed to the land described in the complaint and deposited the same in the bank. McConnell objected to this deed because there was another deed made and signed by appellant as the surviving partner of the estate of M. Soncini, and also by Mark Brizzolara as administrator of the estate. of M. Soncini, conveying the same land to the appellee. This latter deed was made in pursuance of an order of the probate court directing the administrator of M. Soncini "to join with Joe Leroy as surviving partner of the firm of M. Soncini in the sale of said lands for a cash consideration of not less than $2,-000," the order reciting, "the court being satisfied that it would be to the best interest of the estate to sell same as the court may direct."

This witness further testified that the debts of the estate of M. Soncini had been paid; that his understanding of the agreement was that the $200 mentioned was to be paid when appellee or her brother had taken possession of the land; that there had been no demand upon him for

the deposit of the $200, and that his failure to deposit the $200 was not given as a reason for not accepting the deed. He stated that after Soncini's death, he conducted the partnership business as the surviving partner, and when everything was settled up he took charge of the business.

After the testimony was heard upon the above issues and after the argument of the cause, on December 3, 1914, appellant filed a petition asking leave to introduce further testimony in regard to the partnership that existed between appellant and M. Soncini, and in regard to the indebtedness of Mooney as an asset of the partnership, and asked leave to make the widow and children of M. Soncini and the administrator of his estate parties "to the end that same may be contested, and that the title to the said land may be confirmed in the said Joe Leroy as the surviving partner, and that the deeds heretofore executed by the said Joe Leroy and Mark Brizzolara, administrator, to Undine Harwood be declared to convey a valid and subsisting title in fee simple to said land."

The court denied this petition and entered a decree cancelling the agreement for the sale of the lands, and ordered the clerk of the court to pay to the appellee the $2,500 in his hands, together with interest at 6 per cent from the 30th day of June, 1914. To reverse this decree is the object of this appeal.

*Rector & Sawyer,* for appellant.

1. The court erred in the conclusion that under the agreement and the acts of the parties in connection therewith, the appellant bound himself to furnish *an abstract* which showed a title satisfactory to appellee's counsel. We find no agreement either implied or otherwise, that appellant was to be bound by the abstract alone. It is clear that if appellee was relying upon a showing made by the abstract alone, such provision would have been inserted in the agreement. 39 Cyc. 1516.

2. The chancellor says in his opinion: "If it requires evidence *aliunde* from the records to make a per-

fect title, then it is not a perfect title, for, to sustain the same parol evidence must be resorted to."

The agreement only calls for a title satisfactory to appellee's counsel. All parties were aware of the claims of partnership between appellant and Soncini, deceased. Parol testimony is competent in showing the chain of title, to establish the partnership and the fact that the debt was a partnership debt. 39 Cyc. 1458; 64 N. J. Eq., 263.

3. As to the probate court records and deeds thereunder: The status of the property at the death of the decedent, fixes the character of the property, and nothing else can change it. The property was as personalty in the hands of the administrator, and he had a right to sell it without an order of court, and such sale would be valid, unless tainted with fraud in which the purchaser participated. 18 Cyc. 351, 352. Appellant, as surviving partner of Soncini, was entitled to the assets of the partnership. 18 Cyc. 224. In this case the partnership asset was a debt due by Mooney; its character was not changed by being converted into land by the administrator, sanctioned by the surviving partner, and, necessarily, the property at the conclusion of the partnership, would have come to the personal representative, the administrator. 69 Ark. 242; 83 Ark. 313; 48 Ark. 563; 30 Cyc. 630. Appellant had the right to receive the land from the administrator in payment of the debt due by the firm to him. The probate court had authority under the statute to make disposition of this property. Kirby's Digest, § 87.

4. Appellee's counsel could not arbitrarily or capriciously reject the title. Having accepted the trust reposed in him by both parties, he was under the duty to do everything that the circumstances and conditions demanded to ascertain whether or not the title offered by the two deeds was a merchantable title. 94 Ark. 268.

Appellee *pro se.*

1. Appellant has failed to perform the stipulations of the agreement sufficiently to demand specific performance of appellee. The deposit of the $200 stipulated for

was not made, and this is admitted. Such deposit was a necessary part of the agreement. 65 Ark. 320; 105 Ark. 171.

2.    That the refusal of appellee's counsel to approve the title was not arbitrary or capricious is sufficiently established by the chancellor's opinion. 66 Ark. 433.

3.    If the partnership affairs were settled, as stated in counsel's brief, appellant had no right to this property. It belonged to the heirs, and, if partnership property, went to them as real estate. 69 Ark. 237; 48 Ark. 563.

If it was property of the estate, the administrator held it as a mere trustee for those beneficially interested. 18 Cyc. 354.

Probate sales not in substantial conformity with the statute are void. Kirby's Digest, § 3793; 106 Ark. 563.

Wood, J., (after stating the facts). (1) The contract in suit was an executory agreement under which the appellant, for the consideration named, was to convey to the appellee the tract of land described by deed which would give her a clear title to the satisfaction of her attorney. The contract itself and the testimony of the parties thereto, which is not in conflict with the written contract, show that both parties contemplated that the appellee, for the consideration named, should acquire a fee simple title to the land, and the contract and the uncontroverted evidence show that before the appellee paid the purchase money, the appellant should execute to her a deed giving her a title which to her attorney appeared to be satisfactory. In other words, this contract was tantamount to an executory agreement for the conveyance of land by a warranty deed, and one which her attorney, from an examination of the title, could pronounce clear and satisfactory.

In *Tupy* v. *Kocourek,* 66 Ark. 433, we held that "one who contracts and pays his money for a title to land ought to get, not only a title that he can hold against all adverse comers, but one that he can hold without reasonable apprehension of its being assailed, and one that he can readily transfer if he desires, in the market."

In *Whitener-London Realty Co.* v. *Ritter,* 94 Ark. 263, we held that, "Under a contract for the sale of timber

which stipulated that the vendor should furnish a conveyance and abstract of title to be approved by the vendee's attorney, the vendee is entitled to a return of the purchase money paid by him where the abstract of title tendered by the vendor was submitted to the vendee's attorney and rejected by him in good faith."

Of course, it was not contemplated by the parties to the contract under review that the attorney of the appellee should arbitrarily or capriciously disapprove the title tendered by the appellant. But if he did not do this, and in good faith passed upon the title and declared the same unsatisfactory because, in his judgment, the title was not clear, then the appellee was not bound to pay the purchase money, although the title in fact might prove to be perfect.

(2) Now the appellant contends that he complied with the contract on his part when he tendered to the appellee a warranty deed and an abstract of title showing that the land involved had, by order of the probate court, been deeded by the original owner to the administrator of the estate of Soncini and by the administrator to the appellant as the surviving partner of Soncini, and by the administrator of Soncini, in conjunction with appellant as surviving partner of Soncini, to the appellee.

The chancery court, as indicated in a written opinion, went into an investigation of the title thus tendered and decided that the probate court had no jurisdiction to try and determine the ownership of this property. The chancellor found that the petition of Leroy to have the property conveyed by the administrator of Soncini to him as the surviving partner of Soncini "was filed, and acted on by the probate court on the same day; that the administrator, heirs and creditors were not notified or heard."

The uncontroverted proof shows that the land in controversy was conveyed to the administrator of the estate of Soncini for a debt, and was by the administrator of the estate of Soncini conveyed to the appellant as

the surviving partner of Soncini, and by appellant as. the surviving partner jointly with the administrator of the estate of Soncini to the appellee. It was shown that Soncini had a widow and heirs surviving him. · Such being the case, it is unnecessary for us to determine the issue as to whether the probate court had jurisdiction under the statute to make these various orders and whether such orders in fact made the title perfect in the appellant. The probate court ordered the administrator of the estate of Soncini to convey the land to appellant as the surviving partner of Soncini. If this order was valid when executed, then certainly thereafter the probate court would have no power to direct the administrator to join in a conveyance of the same land to appellee. These orders were inconsistent and contradictory.

The attorney for the appellee, upon an investigation of this title which appellant tendered as a compliance with his contract, was not satisfied that the same would give to the appellee a clear title, and he wrote to the appellant, in part, as follows: "There is so much conflict in the orders of the probate court and the rights of yourself and the rights of the heirs of M. Soncini, these heirs being minors, that I do not think that you have the legal right to convey the title, and sooner or later there will be litigation over it."

The learned chancellor himself, after a thorough examination of the records and an elaborate review of the facts and the law, announces his conclusion on this point as follows: "I would not have accepted this title offered by defendant as a perfect one or recommended same to a client as perfect."

(3) It can not be said, in view of the above record, that the attorney of the appellee acted arbitrarialy or capriciously in disapproving the title tendered by the appellant. It suffices to say that the attorney was warranted in his conclusion that such title did not meet the requirements of the contract under the rule announced in *Tupy* v. *Kocourek, supra.* The appellant therefore

did not comply with his contract, and the court did not err in refusing to permit him to amend his pleadings and to bring in new parties in order to enable him to take proof to show that he might be able to thereafter perfect his title if the same was not already perfect.

The decree was in all things correct and it is affirmed.