BEATY *v.* GRIFFIN.

5-2750                                              360 S. W. 2d 126

Opinion delivered September 17, 1962.

*Eddy & Eddy,* for appellant.

*Johnston & Rowell,* for appellee.

NEILL BOHLINGER, Associate Justice. This case arises from the proposed sale of a house in Morrilton which was owned by the appellant, Clib Beaty. After negotiations covering some time, the appellee, Barney Griffin, agreed to pay the appellant the sum of $12,000.00 in cash for the house.

In order to carry through this trade, the appellee contends that it was agreed between the parties that the appellee would transfer title to a car which he owned to the appellant as a credit of $1,895.00 on the down payment, pay the difference between the $1,895.00 and $3,500.00 in cash and obtain a loan from the Morrilton Building and Loan Association for the balance of $8,500.00.

In bringing that matter to a conclusion, as they thought, the parties hereto met at the appellee's house in Morrilton. Appellee gave to the appellant the title papers and possession of the car, which appellee and his wife state was given to the appellant upon the appellant's assurance that he would take the car and have it washed and polished, and if the trade failed to go through he would return the car. This testimony is denied by the appellant. The appellee contends, and the chancellor found, that there were assurances by the appellant that the appellee could borrow whatever amount was needed to pay the balance due on the house from the Building and Loan Association, which amount, after the credit of $3,-500.00, would have been $8,500.00.

Some time after appellant left with the car, the appellee called the manager of the Building and Loan Association who told him that the maximum amount which he could borrow on the house was $8,000.00. The appellee phoned the appellant immediately and told him that contrary to what had been reported to him, he could not borrow a sufficient amount of money to enable him to close the trade and demanded the return of his car. Appellant advised appellee that it was too late for him to call the manager of the Building and Loan Association that night but if he saw him the next day he would talk to him and that there was something wrong because the Building and Loan man had told appellant that he would lend him more than $8,000.00.

In conversation with the Building and Loan man the next day the appellant was advised that $8,000.00 was the most the Building and Loan Association would loan on the house and although the deal failed to go through for that

reason appellant did not account to the appellee for the car.

The chancellor found that there was a mutual mistake of a material fact and we think that finding is supported by a preponderance of the evidence. Griffin's resources consisted of a car valued at $1,895.00 and $1,605.00 in cash which would enable him to make a $3,500.00 down payment and an $8,500.00 loan from the Building and Loan Association would make the $12,000.00. We are convinced, as was the chancellor, that Griffin was led to believe that no difficulty existed in securing a loan of $8,-500.00 on the place. In fact, the appellant testified that the house had been approved by FHA for a loan value of $9,800.00 but the appellant fails to bring in any testimony from the Building and Loan Association or FHA that either agency would lend $8,500.00 to Griffin to enable him to complete the trade. Had the loan from the Building and Loan not been a factor in negotiations, we incline toward the belief that when Griffin phoned the appellant the night he found that $8,000.00 was the maximum loan value the appellant would have then and there advised the appellee that the loan from the association was none of his concern. But instead he said he didn't understand it and would see the manager of the Building and Loan Association.

If the appellant knew that Griffin was dependent on a $8,500.00 loan and knew that $8,000.00 was the most he could borrow and failed to advise appellant of that fact, then the appellant would be guilty of a fraud by his silence. But we do not think the testimony supports that theory for the appellant testifies that the FHA had a loan value of $9,800.00 on the house.

We conclude that the chancellor was correct in saying that the appellee was entitled to rescind the trade and recover his car or its value by reason of a mutual mistake of a material fact. The case falls squarely within our finding in the case of *Blythe* v. *Coney,* 228 Ark. 824, 310 S. W. 2d 485, wherein there was a mutual mistake by the contracting parties as to the availability of a water supply

to a house. That case cites and affirms *First National Bank of Wynne* v. *Coffin*, 184 Ark. 396, 42 S. W. 2d 402:

"A contract can be cancelled or rescinded for a mutual mistake of a material fact."

We think in this case that both parties knew of the materiality of the appellee's loan and that when the car was delivered to the appellant each party fairly believed that a loan of $8,500.00 could be secured. It was at best a mutual mistake of a material fact. The chancellor so found and we affirm the decree.