Jimmy M. BAUGH *v.* Royce O. JOHNSON and Neale M. BEARDEN

CA 82-173                                        641 S.W.2d 730

Court of Appeals of Arkansas
Opinion delivered November 10, 1982
[Rehearing denied December 8, 1982.]

310

*Holmes, Holmes & Trafford,* for appellant.

*Coleman, Gantt, Ramsay & Cox,* by: *Martin G. Gilbert,* for appellees.

GEORGE K. CRACRAFT, Judge. Jimmy M. Baugh appeals from an order of the chancery court directing him to specifically perform a contract under which he agreed to purchase farm lands belonging to Royce O. Johnson and Neale M. Bearden at a price of $275,000.

The appellees, Johnson and Bearden, were the owners of approximately 180 acres in Lincoln County. The tract consisted of the Southeast Quarter (SE 1/4) of Section Eight (8), Township Eight (8) South, Range Seven (7) West, and 20 acres in the Southwest Quarter of that section lying east of Bayou Bartholomew. The Bayou made a horseshoe bend in the Southwest Quarter of that section. Ten acres of the lands owned by the appellees lay northeast of the Bayou in the Northeast Quarter of the Southwest Quarter, and the

balance lay southeast of the Bayou in the Southeast Quarter of the Southwest Quarter.

In January of 1981 the appellees listed the farm for sale with Robert Harper, a realtor in Star City. Harper was familiar only with the general location of the property and was not then furnished with a copy of the legal descriptions of the lands.

On January 26, 1981 Harper contracted with Baugh for the sale of the property for $275,000. At the time the sale was negotiated Harper located the lands on a county ownership map which indicated that the appellees' 20 acre tract lay wholly within the South Half of the Southwest Quarter of Section Eight. The west 10 acres of that shown on the property map and described in the contract did not in fact belong to appellees. This map did not show appellees as owners (which they in fact were) of the 10 acres lying northeast of the Bayou in the Northeast Quarter of the Southwest Quarter.

Harper then prepared a contract of sale which described the lands as shown on the county ownership map. At the time of the negotiations Baugh mentioned that he was aware that one Ryall was planting wheat on a portion of the farm and asked that the contract contain the stipulation "buyer to have 1981 crop." Such a provision was included in the contract which further provided that the seller would deliver possession of the property to the buyer within ten days after the closing date. No closing date was specified. At that time appellant was assured that possession could be delivered within the time specified in the contract.

According to the findings of the chancellor the mistake was not detected until February 11th when the abstract of title was delivered to Harper. On that date he again met with Baugh and pointed out to him the error in the description. According to Harper no protest was made by appellant concerning the improper description. Appellant again indicated that Ryall was still in possession and appeared to be going on with the wheat crop. He was then assured by appellees' attorney that Ryall had no lease for 1981 and

would vacate the premises on the date specified in the contract. The chancellor found that at that meeting and thereafter no further protest was made by appellant as to either the error in the description or the continued possession of Ryall.

On conflicting evidence the chancellor further found that Harper and appellant met again ten days later at which time appellant informed Harper that he had elected to rescind the contract because he found that there was "more land in the highway that divided the 160 acre tract and in the bayou than I thought." The chancellor accepted Harper's testimony that at that time no mention was made either of the erroneous description or of the continued presence of Ryall. At the time the election to rescind was communicated appellant stated to Harper that he would purchase the land for $230,000. This was communicated to appellees who informed appellant that they would accept no less than $250,000 or suit for specific performance would immediately follow. Appellant refused to do so and this suit was immediately instituted.

Appellant answered asserting that he had a right to rescind the contract because there had been a material misrepresentation as to the acreage and location of the land and a breach of the condition that he was to have "the 1980 crop." He averred that Ryall continued to possess the land and cultivate his wheat crop. By subsequent amendment he further contended that appellees' title to a portion of the land was not merchantable due to adverse possession of others. The chancellor found all issues against appellant and this appeal followed.

The appellant advances several points for reversal, each of which will require a recital of additional facts deemed pertinent to an understanding of our decision. The parties are not in substantial dispute as to the law governing each of these points. They differ only as to the applicability of those rules to the facts of the case. One cardinal rule, however, is applicable to all points. While chancery cases are reviewed *de novo* on the record, the findings of a chancellor will not be disturbed on appeal unless clearly against a preponder-

ance of the evidence and in making the determination we give due regard to the superior position of the trial court to judge the credibility of the witnesses and the weight to be given their testimony. Rule 52 (a), Arkansas Rules of Civil Procedure; *Andres* v. *Andres,* 1 Ark. App. 75, 613 S.W.2d 404 (1981).

I

## THE TRIAL COURT DID NOT ERR IN HOLDING THAT THERE WAS NO MUTUAL MISTAKE OF FACT WHICH WOULD ENTITLE APPELLANT TO RESCIND HIS OFFER TO PURCHASE.

It was not disputed that Harper was appellees' agent and that he represented to the appellant that appellees owned and were contracting to sell 20 acres of land lying in the South Half of the Southwest Quarter of Section Eight. Harper located the 20 acre tract on a county ownership map which did show appellees as the owner of 20 acres adjoining the Southeast Quarter and lying south of Bartholomew Bayou. Nor was it disputed that the acreage owned by appellees in the South Half of the Southwest Quarter was only 10 acres and that the remaining 10 acres owned by them in the Southwest Quarter actually lay in the North half. In other words the appellees did not own 10 of these acres that Harper represented they owned at the time the contract was made. The appellant contends that the chancellor erred in not directing a rescission of the contract based on that mistake as to the quantity of land sold and its relative position to other lands. We do not agree.

Our courts have held that mistake standing alone is not sufficient to warrant rescission of a contract. It must appear further that the mistake involved a fact material to the inducement to the making of the contract. *Beaty* v. *Griffin,* 235 Ark. 389, 360 S.W.2d 126 (1962); *Blythe* v. *Coney,* 228 Ark. 824, 310 S.W.2d 485 (1958); *Wright* v. *Boltz,* 87 Ark. 567 (1908); *Yeates* v. *Pryor,* 11 Ark. 58 (1850). It must also be shown that the relative position of the parties and their means of information was such that the vendee must necessarily be presumed to have contracted upon the faith he

placed in the statements of his vendor. *McCormick* v. *Daggett*, 162 Ark. 16, 257 S.W. 358 (1924) and *Yeates* v. *Pryor, supra.*

The agent Harper was not at all familiar with the property and knew only its general location. He had to refer to a county property ownership map to determine its acreage and location. The appellant, having lived in the immediate area all of his life, was thoroughly familiar with the appellees' farm. His home was less than half a mile from it; he farmed land owned by his father which has a common corner with appellees' farm. He was familiar with who had worked the farm in prior years and was aware that appellees' tenant Ryall had planted wheat on parts of it. He also knew that the Brown brothers were farming part of the land south of the Bayou. Appellant was informed of the error but did not complain of it or base his request for rescission on it. The chancellor expressly found that appellant's position and his means of information with respect to the property was far superior to Harper's and the court also found that neither the quantity of acres nor the erroneous description was a controlling factor in the consummation of the contract. We cannot conclude that these findings were clearly erroneous.

## II

### THE TRIAL COURT DID NOT ERR IN HOLDING THAT THE APPELLEES HAD NOT BREACHED A SPECIAL CONDITION IN THE OFFER AND ACCEPTANCE WITH RESPECT TO THE 1981 CROP.

The appellant next contends that the trial court erred in holding that there had been no breach of a special condition that appellant would have the 1981 crop. We do not agree.

At the time the contract was executed the appellant asked for, and Harper inserted, this special condition in the contract. It was not disputed that at the time the contract was executed appellant knew that Ryall had planted wheat on 20 acres in the Southeast Quarter and was in possession of the farm on the date of trial. On February 11th the appellant

talked to Harper about the Ryall wheat crop and received assurances from the appellees' attorney that Ryall had no lease on the property for 1981 and that possession of the farm would be delivered at the time specified in the contract. Ryall testified that at the time he talked to the attorney on February 13 he would not have interfered with the sale of the property. There was testimony that after this assurance was given the question of the wheat crop never again came up between the parties. Harper testified that at a subsequent meeting on February 28th the possession issue was not mentioned but that appellant had then stated he would not perform the contract because "there were more acres in the highway and bayou than he had thought." Ryall further stated that he did not elect to cultivate the rest of the lands until he learned of appellant's renunciation of the contract.

The trial court found that the appellant contracted for the purchase of the property with full knowledge of Ryall's possession and wheat crop and that the appellees had worked out an understanding with Ryall under which appellant could have had possession within ten days of the date of closing as provided in the contract. The court expressly found that Ryall would have been agreeable either to the surrender of possession or to any other arrangement satisfactory to appellant, and that he "would not have been difficult to deal with at all." The court further found that there was no way for the appellant to know on the date he elected to rescind that possession of the farm could not be delivered to him within ten days of the date of closing. There was no provision in the contract which required the appellees to have Ryall vacate the premises or place the appellant in possession of the property before the date specified. The appellant's obligation to perform on the specified day was not contingent on prior performance on the part of the appellees in this respect. In the absence of a provision in the contract making appellant's obligation to perform contingent on prior performance by appellees of all of the provisions of the contract, such a provision cannot be read into the contract by the court. *Knox* v. *Knox,* 337 Michigan 109, 59 N.W.2d 108 (1953).

We cannot say that the findings of the trial court on this point are clearly erroneous.

### III

## THE TRIAL COURT DID NOT ERR IN HOLDING THAT THE DEFECTS IN APPELLEES' TITLE DID NOT WARRANT RESCISSION OF THE CONTRACT.

The appellant next contends that the chancellor erred in allowing specific performance because it was proved that the appellees' title to the entire tract was not merchantable. It was proved appellees had no title to 10 acres described in the contract that one Halford resided on and claimed ownership of approximately 5 acres of woodland located in the Southeast Quarter and that Brown was cultivating 2.2 acres of appellees' land in the Southwest Quarter. There was evidence that the adverse claims had been maintained for more than the statutory period. We agree that the appellees did not have merchantable title to those areas. We also agree that a vendee in a contract to purchase real estate ordinarily cannot be compelled to accept a title which is not merchantable and can only be required to accept a title that he can hold without reasonable apprehension of being assailed and which is free from reasonable doubts that might affect its value or interfere with its sale. *Holt* v. *Manuel,* 186 Ark. 435, 54 S.W.2d 66 (1932); *Leroy* v. *Harwood,* 119 Ark. 418, 178 S.W. 427 (1915). Even though a portion of appellees' title was defective, we do not agree that the chancellor erred in his application of the law with respect to such titles to the fact which he found in this case.

Early in our judicial history our court declared the rules applicable to the rights of parties to contract for the purchase of real estate where a portion of the title contracted to be sold is found to be defective. *Yeates* v. *Pryor, supra,* recognized a distinction between the rights of a vendor and of his purchaser in such cases. The vendor may not rely on defects to a portion of his tendered title to relieve him of his obligation under the contract. The vendee in such cases may elect to take the entire title in its defective condition or only

that part of it to which the vendor may show merchantable title. In either event he has a right to seek an abatement of the purchase price as to the deficiency. Of course a vendee is not required to do either and may elect to rescind the entire contract, retrieving any earnest money paid. This right of complete rescission, however, was limited in *Yeates* as follows:

> There can be no doubt that the defect in the quantity sold may be of such a nature, or of such an extent, as to entitle the vendee to a recision [sic] of the contract. On the other hand, it may be so small, or of such a nature as to afford no solid objection to the specific execution of the contract. It is difficult to lay down any general rule upon the subject; each case must, of necessity, depend on its own peculiar circumstances. *Reynolds* v. *Vane,* 4 Bibb. 215. *Cumins* v. *Boyle,* 1 J.J. Marsh, 481. *Bollock* v. *Wilson,* 3 Dana 26. *Buck* v. *McCantry,* 5 Mon. 230. *McCorn* v. *Delany,* 3 Bibb. 48. *Moredock* v. *Rawlings,* 3 Mon. 76, are cases where specific performance was, under various circumstances, decreed, although it appeared that the vendee could not get the benefit of his whole contract. The court, in these cases, seems to have been mainly influenced by the consideration that the deficit was so small or unimportant as not very materially to affect the interest of the parties.

> . . . .

> In this case, the vendee asks that he may be relieved from the whole contract, and we think it clear that he is entitled to the relief sought, unless the quantity to which the vendor is unable to make title should be so small and unimportant as, in a matter of conscience, to forbid that he should capriciously insist upon his contract.

Whether the part of the tract to which the defect pertains is too small or inconsiderable in comparison to the value as a whole to warrant rescission under this limitation is a question of fact for the chancellor to determine. The area

occupied by Halford was separated from the main tract of appellees' land by a bayou and woods. It was not accessible from any other lands owned by the appellees. It was wild, unimproved timber land which was not suitable for that purpose unless and until access could be provided. Halford did not appear to have the portion claimed by him under fence and, due to the nature of the land his claim of possession might easily be limited to that which he actually occupied with his residence.

The chancellor found that most of the lands lying in the 20 acre tract in the Southwest Quarter was in woods. Of the 10 acres to which the appellees had no title only 5.4 acres were cultivatable. Of the 10 acres to which appellees had record title, only 2.2 acres were adversely claimed. The chancellor found from all of the attending circumstances that the quantity of acres was not such a material inducement to the making of the contract to warrant rescission. He could and did find that the deficit was so small and unimportant that it did not materially affect the interest of the parties and applied the limitations on rescission set forth in *Yeates*. We cannot say that these findings of the chancellor or his application of the law to those findings was clearly erroneous.

## IV

### THE TRIAL COURT DID NOT ERR IN HOLDING THAT THE CONTRACT CALLED FOR A SALE IN GROSS AND THAT THE RECITAL OF ACREAGE IN THE DESCRIPTION WAS NOT OF THE ESSENCE OF THE CONTRACT.

In support of his contention that the court erred in holding that the contract was a sale in gross and not by the acre, appellant advances two apparently inconsistent arguments. The main thrust of appellant's argument insists that the trial court was required to find that there was a sale by the acre and not in gross because "the appellees specifically contracted to sell appellant 20 acres in the Southwest Quarter of Section Eight and could deliver only 10 acres." He argues that as the lands in the Southwest Quarter were

not described by metes and bounds or definite lines but by enumerating acres, delivery of the specified acreage was of the essence of the contract. We cannot agree.

The contract described the lands to be sold as all of the Southeast Quarter of Section Eight and "20 acres located in the South Half of the Southwest Quarter of that section."[1] While the description in the contract did not specify the number of acres contained in the Southeast Quarter, the general land office surveys, except in unusual situations, provide that a quarter section contain 160 acres. The general description of the two tracts was followed by the phrase "containing 180 acres, *more or less.*"

It is well settled that where a description contains words of qualification such as "more or less" or words of similar import, a statement of quantity of acres is a mere matter of description and not of the essence of the contract. In such cases a mention of quantity is not a covenant; nor does it afford grounds for breach even though the stated number of acres falls short of that mentioned in the contract, unless there is fraud or the shortage is of such magnitude that the contract would not have been consummated if the facts had been known. *Hays* v. *Hays,* 190 Ark. 751, 81 S.W.2d 926 (1935). The chancellor expressly found that the purchase price was computed not on a per acre basis or upon the number of tillable acres, but for the farm. He further found that the shortage was not of that magnitude required in *Hays.*

Appellant alternatively asserts that those rules applicable to sales in gross or by the acre envision a merchantable title to lands within a definite description but which, due to gross mistake, contain substantially less acreage than agreed upon by the parties in their contract. He submits that where, as here, the shortage did not result from mistake or misstatement of the quantity of lands embraced within the agreed description but to failure of title to a part of it, the rules governing sales in gross have no application. While we

---

[1] The question of the legal sufficiency of the description was not raised in the trial court and is not considered on appeal.

are inclined to agree with this statement of the law, we find no error in the court's action. The court's discussion of sales in gross was not the basis for his decision in this case. He recognized the shortage due to defects in title but found the deficiency too small in comparison to the whole to warrant rescission.

V

### THE TRIAL COURT DID NOT ERR WHEN IT REFUSED TO RECEIVE PROFFERED EVIDENCE OF THE APPELLANT'S NEW OFFER AND AP-PELLEES' COUNTER-OFFER.

During the course of the trial the appellant made a proffer of proof that at the time he notified Harper that he would not perform, he proposed a new offer of $230,000. He proffered that appellees rejected that offer but made a counter-offer of $250,000. The appellant contends that it was error for the court to exclude that testimony as it tended to prove a mutual rescission and the reopening of negotiations for a new contract. The chancellor ruled that one cannot unilaterally disavow a contract freely entered into and that appellant had no valid grounds for rescission. He found that the counter-offer made by appellees was an effort to compromise and settle the dispute. The evidence fully supports such a finding. Evidence of conduct or statements made in compromise negotiations is not admissible on the issue of liability. Rule 408, *Uniform Rules of Evidence*. We find no error.

Affirmed.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Judge, dissenting. This is a specific performance case. In *Carrick v. Gorman*, 232 Ark. 729, 733, 340 S.W.2d 377, 380 (1960), the Supreme Court stated the rule that a vendor must have good title when he sues for specific performance. Here, everyone agrees appellees' title is defective because at least two people hold a part of the subject land adversely. The majority's decision upholding the trial

court's order granting the appellees (vendors) specific performance is clearly contrary to the rule of property announced in *Carrick* v. *Gorman.*

The majority relies on the case of *Yeates* v. *Pryor,* 11 Ark. 58 (1850). In *Yeates,* the vendee filed a suit to cancel his contract to purchase land from the vendor because the vendor's title was defective. The Court held the vendee was entitled to rescission because the vendor failed to perfect title to the land he agreed to convey. The Court indicated, however, that if the defect had been small or immaterial, it would have held otherwise.

While a materiality issue may be relevant in a rescission action brought by a vendee, such an issue is inapposite in a situation in which the vendor seeks specific performance. This distinction was noted in *Carrick* v. *Gorman, supra.* In sum, the court stated in *Carrick* that a vendee, seeking cancellation of a contract, cannot avail himself of defects in the vendor's title without first giving the vendor notice and a reasonable opportunity to cure the flaw. But when it is the vendor who files suit to enforce the contract and the vendee pleads a defect in title, the Court stated it would be manifestly impractical to permit the vendor to ask in the middle of the trial that the hearing be adjourned to afford him an opportunity to remedy the defect. Hence, the rule: a vendor must have good title when he sues for specific performance.

Because the instant case was instituted by the vendor for specific performance, I am convinced the holding in *Yeates* v. *Pryor* is not applicable. After appellant showed that appellees' title was defective, appellees' request to enforce the parties' contract should have been denied. Materiality — like that considered in *Yeates* — was not a relevant issue. Rather, the sole question here was whether appellees could convey merchantable title; the evidence is clear that they could not.

The Supreme Court in *Holt* v. *Manuel,* 186 Ark. 435, 54 S.W.2d 66 (1932), a specific performance case, said that a merchantable title is held to be one which imports such

ownership as enables and insures to the owner the peaceable control and use of the property as against everyone else. The Court also related the following approved definition of merchantable title:

> "A marketable title is one that is free from reasonable doubt. There is reasonable doubt when there is uncertainty as to some defects appearing in the course of its deduction, and the doubt must be such as affects the value of the land or that will interfere with its sale." *Griffith* v. *Maxwell*, 63 Ark. 548, 39 S.W. 852. And in *Fenner* v. *Reeher*, 148 Ark. 553, 230 S.W. 581, we quoted with approval the following: *"The court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings; or, as it is usually expressed, it will not compel him to buy a lawsuit."* *(Emphasis supplied).*

*Id.* at 437-38, 54 S.W.2d at 67.

Considering only the evidence reflecting the hostile claims against the farm land — not to mention the tenant who farms part of the land under an oral lease — it is obvious that future litigation will ensue. Even if appellant chooses not to sue to protect his interests, the people holding adversely are sure to file suit to quiet title in the land they farm. Appellant, no doubt, has brought lawsuits.

Appellees argue that because this was a sale in gross, the small amount of acreage lost to others by adverse possession is immaterial and should not relieve appellant from his contractual obligations. This shortage in acreage is not the result of a mistake or misstatement of the quantity of lands contained within the legal description. Rather, it is the result of appellees' failure to hold good title to part of the land because of encroachments. I can find no Arkansas case law which would apply rules governing sales in gross to the type situation that exists here, and I am of the opinion those rules are inapplicable.

In conclusion, appellant has been forced to purchase land which he did not agree to buy. In addition, that "unagreed-to land" is conveyed with "unwanted future litigation." He simply should not have to buy such litigation, especially when he is not receiving the land which he agreed to purchase in the first place.

I would reverse.

I am authorized to state that CORBIN, J., joins in this dissent.