## MAYS v. BLAIR.

### Opinion delivered July 12, 1915.

1. CONTRACTS—EXECUTORY CONTRACT TO CONVEY LAND.—An instrument purported to convey certain property to appellant, and contained a granting but no habendum clause, it recited a cash payment, and a provision for the payment of the balance of the purchase price, but provided that if the purchaser failed to pay the balance, that the title was to be considered in the grantor, without any reconveyance, and that the grantor was not required to return the amount paid. *Held*, the instrument would be treated as an executory contract to convey, and not as a deed of conveyance.

2. VENDOR AND PURCHASER—EXECUTORY CONTRACT OF SALE—RETENTION OF PURCHASE PRICE.—A purchaser of lands may, so long as the contract remains unexecuted by a conveyance, as a general rule, recover back or detain the purchase money, if the title of the vendor be not such as the purchaser is, under the contract, entitled to require.

3. VENDOR AND PURCHASER—EXECUTORY CONTRACT OF SALE—RIGHT TO MARKETABLE TITLE.—A purchaser of land under an executory contract, is entitled, before he is required to pay the purchase price, to receive, not only a good title but one which is marketable.

4. TITLE—MARKETABLE TITLE—ADVERSE POSSESSION.—A title to be marketable must be a clear record title, and title by adverse possession does not constitute marketable title which a purchaser is bound to accept.

5. VENDOR AND PURCHASER—EXECUTORY CONTRACT OF SALE—MARKETABLE TITLE.—Aside from any particular language in an executory contract of sale, there is an implied agreement, unless stipulated to the contrary, that the purchaser shall receive a marketable title.

6.  APPEAL AND ERROR—APPEAL FROM DECREE IN CHANCERY.—PRESUMP-
    TION.—Appeals from chancery decrees are tried *de novo*, with the
    presumption in favor of the chancellor's finding upon every issue
    of fact.

7.  VENDOR AND PURCHASER—EXECUTORY CONTRACT OF PURCHASE—MARKET-
    ABLE TITLE—DEFECTIVE DESCRIPTION.—In appellee's record title to
    certain lands, which he contracted to sell to appellant, certain
    deeds to him read: "All our undivided one-third of one-ninth in-
    terest as heirs of Samuel Leslie, deceased, in the following de-
    scribed lands, situated in Searcy County, Arkansas, towit: part
    of the northwest quarter of the northwest quarter of section 26,
    township 14 north, range 14 west." *Held*, the description did not
    convey a marketable title.

8.  VENDOR AND PURCHASER—EXECUTORY CONTRACT OF SALE—CASH PAY-
    MENT—RIGHT TO RECOVER.—In an executory contract for the sale of
    land, where time was not of the essence, appellant immediately
    cured such defects in his title as were pointed out by the purchaser
    and his attorney, after which the purchaser refused to proceed fur-
    ther and sued to recover a cash payment made on the purchase.
    *Held*, that the seller was entitled to a reasonable time to cure any
    defect in his title which might be pointed out to him, and that the
    purchaser could not recover back the cash payment made to the
    seller, until it appeared that the seller could not furnish him a
    marketable title.

Appeal from Searcy Chancery Court; *T. H. Hum-
phreys,* Chancellor; reversed.

*Bratton & Bratton,* for appellant.

1.   A vendee is entitled to the return of his money
where the vendor is unable to produce the title contracted
for. 20 Ark. 437; 47 Ark. 21; 86 Ark. 446. In this case
the vendor failed to comply with his contract to convey
the land by January 10, 1913, by *warranty deed with com-
plete abstract certified up to date.* It was not the inten-
tion of the parties to rely simply upon the warranty deed
of the grantor. The "complete abstract, certified up to
date," specifically called for by the contract, means such
a record title, reflected by the records and abstract, as
shows a perfect title, and no other. 1 Cyc. 213; 31 Pac.
504.

Deeds containing such descriptions as " Pt. S. W. ¼,
S. W. ¼, section 23, etc., are void for uncertainty. 60

Ark. 487; 68 Ark. 155; 73 Ark. 38; 59 Ark. 462; 35 Ark. 477; 30 Ark. 657; 48 Ark. 425.

Where a contract expressly or impliedly calls for a record title, a title by adverse possession is not sufficient. 39 Cyc. 1460; 134 Ia. 381; 102 Mo. App. 384; 60 *Id.* 535; 139 Cal. 384; 160 N. Y. 156; 97 Minn. 385; 8 Ind. App. 291. A vendee is not bound to accept title by adverse possession. 65 How. Prac. 75; 36 N. Y. Supp. 668; 23 Ky. 754; 87 Cal. 49; 139 Mass. 436; 96 N. E. 997; 85 Cal. 535.

2. A vendee is not compelled to accept a doubtful title. 112 Pa. St. 485; 10 Cent. Rep. 155; 108 N. Y. 618; 26 U. S. 455; 9 U. S. 262; 46 Hun 839; 41 *Id.* 311; 120 N. Y. 79; 10 Ill. 174; 5 La. 845; 64 Md. 543; 117 Mass. 184; 24 Ark. 197; 8 N. J. Eq. 520; 3 Atl. 821; 32 S. W. 844; 63 Ark. 548, and cases cited; 44 Ark. 145; 66 Ark. 433.

3. Appellant had the right to demand that appellee would be in position to comply with his contract on January 10, 1913. The extension granted was without consideration and voluntary on the part of appellant, merely to give appellee all reasonable opportunity to comply with his contract. Notwithstanding appellant's forbearance, appellee four months later was not able to present a good title, and refused to do more, but insisted that his title was all that was called for. Appellant then had no option but to accept the title presented by Blair at that time, or to demand the return of his money. He was entitled to the return of his money and the court erred in not giving judgment therefor. 21 Ark. 238; 5 Denio 161; 6 Barb. 147; 52 N. C. 567; 22 Ark. 427; 23 Ark. 639; 7 Ark. 207; 119 S. W. 134; 54 Am. Dec. 494; 31 *Id.* 274; Fed. Cas. No. 16950; 87 Cal. 203; 92 *Id.* 131; 3 App. D. C. 1; 11 Ill. App. 450.

*S. W. Woods* and *A. Y. Barr,* for appellees.

1. The contract was written by Mays. Its wording is of his own choosing. If it is ambiguous, or capable of two constructions, it must be construed most strongly against him. 112 Ark. 1; 105 Ark. 519; 90 Ark. 256.

The words of the contract will be given their usual and ordinary meaning, unless the proof shows that a tech-

nical meaning was intended, and that use or meaning shown to be general among the class of persons concerned in the transaction to such an extent that it may be inferred to have been used in the technical sense. 65 Fed. 382; 105 Ark. 518.

2. We find nothing in the authorities holding that a contract for an abstract or a "complete abstract" means an "abstract showing a complete record title. For definitions of an abstract of title, see 119 S. W. (Tex.) 709; Anderson's Law Dictionary; 82 Cal. 533; 71 Ia. 278. If it had been intended that Blair should furnish a "complete abstract certified up to date showing a complete record title," the contract should have been so drawn.

3. Blair has a good fee simply and merchantable title to the lots. The abstract shows a full, complete and perfect record title to the Joseph T. Blair lands from the United States down to and including appellee, being described in all the deeds by Government corners, lines, creeks, directions, distances and other boundaries, so that it could be accurately surveyed and platted. 30 Ark. 513; 40 Ark. 237; 3 Washburn, Real Prop. (3 ed.), 347; Devlin on Deeds (2 ed.), § 1012.

Under the rule stated in the authority last cited, we contend that the abstract shows a complete record and merchantable title in appellees to the few lots carved out of the Samuel Leslie lands. To make appellee's title complete and certain, the land in controversy was set apart to him by metes and bounds by a decree of the chancery court in 1900, and he has had it inclosed, and held it adversely ever since.

Whatever interest Nancy Leslie owned in the land, if any, was sold by proceedings in the probate court, pursuant to section 4032, Kirby's Digest, and the sale was approved and confirmed in 1902. Any irregularities or defects in the sale were cured by confirmation. 44 Ark. 411; 52 Ark. 341.

As to Floy Bratton, Belle Treadwell and Ona Waterson, the probate sale would have cut off any claim by them. The statute bar on judicial sales rules against married women the same as others. 115 Ark. 359.

In general the vendor has until the last payment to obtain title, and the vendee can not rescind for the lack of title, if the vendor is solvent. Appellee is shown to be solvent. 60 Ark. 39. Before a vendee is justified in rescinding a contract on the ground of defect of title, or that the title is not good, the defects must be shown to be of a substantial and existing nature, and not merely speculative or apprehended ones. 22 Ark. 435; 23 Ark. 147; 31 Ark. 151.

And in an action for rescission of a contract, the vendor has a right to rely on whatever title he may have by limitation or otherwise. 80 Ark. 2.

4. By the payment of the thousand dollars and agreement to pay the balance in installments, Mays exercised his right of purchase and became bound thereby for the payment of the balance. 93 Ala. 153, 6 Ruling Case Law, 603.

McCULLOCH, C. J. This is an action instituted by appellant, Ed Mays, to recover a portion of the contract price which he had paid to defendant, George T. Blair, on the purchase of 125 lots in the town of Leslie. The agreed purchase price was the sum of $10,000, of which $2,000 was paid in the beginning, and a thousand dollars paid subsequently. Appellant's claim is that the vendor broke the contract by failing to furnish a marketable title to the lots sold; and appellees, Blair and wife, claim that they furnished not only a perfect legal title, but a marketable title, and that appellant broke the contract by refusing to take the property and pay the balance of the purchase price, and that for that reason he should not be permitted to recover. The court rendered judgment in favor of appellant for the recovery of the thousand dollars paid subsequent to the sale, but denied recovery as to the $2,000 paid in cash at the time the agreement was reduced to writing.

The primary question in the case is whether or not the contract was an executed one or whether it was executory. In other words, whether the instrument of writing

executed by the vendor to the vendee was a deed convey-
ing the title with covenants of warranty, or whether it
was an executory contract to convey. Much depends in
this case upon a solution of that initial question. In order
to ascertain the exact legal meaning of the instrument, it
will be set forth in full:

"Know all men by these presents: That for and in
consideration of the sum of two thousand dollars to us
cash in hand paid by Ed Mays, and the further sum of
eight thousand dollars, to be paid by January 10, 1913,
Geo. T. Blair and C. A. Blair, his wife, do hereby grant,
bargain, sell and convey unto the said Ed Mays, and his
heirs and assigns, the following described real estate ly-
ing in the county of Searcy, State of Arkansas, towit:
(Here follows description by lot and block numbers of the
125 lots forming the subject-matter of the transaction.)
It is expressly understood and agreed that the said Ed
Mays, grantee, and his heirs and assigns, shall within the
time above named have right and option to pay the bal-
ance of the said purchase price, and the grantor herein
obligates himself to receive the same and to make nota-
tions of the receipt of the same upon the margin of this
conveyance, if presented to him for that purpose, and
upon the margin of the record thereof in the office of the
recorder, and to make a warranty deed with complete ab-
stracts certified up to date. And it is further understood
and agreed that should the grantee fail to do so, then all
of his rights under this instrument of conveyance shall be
forfeited, and the title shall revert at once to the grantor,
his heirs or assigns without any other deed of conveyance
or instrument of release being executed, and grantor owes
grantee nothing, and grantee owes grantor nothing. The
said Geo. T. Blair, grantor, hereby covenants with the
said Ed Mays, grantee, heirs or assigns, that he will for-
ever warrant and defend the title to the property above
granted against the lawful claims of all persons whomso-
ever. And I, C. A. Blair, wife of the said Geo. T. Blair,
for the consideration and purposes aforesaid, hereby join
in the execution of this instrument with my said husband,
and release and relinquish to the grantee, his heirs or as-

signs, all of my claim to dower and homestead in and to the above granted premises. Witness our hands and seals this 16th day of August, 1912.''

(1) The instrument was executed by Blair and his wife and duly acknowledged and filed for record. It will be observed that the instrument just set forth contains the usual form of granting clause, but it does not contain a formal *habendum* clause. The clause following the description of the property constitutes, in substance, a stipulation that the vendee shall within the time named pay the balance of the agreed purchase price, and that upon his failure to do so all his rights under the instrument are forfeit, ''without any other deed of conveyance or instrument of lease being executed,'' and without return of any part of the purchase money paid. On the other hand, the stipulation is that the vendor shall, when the payment is made, make endorsement on the record and execute ''a warranty deed with complete abstracts certified up to date.'' We think that, according to the decision of this court in the case of *Kelly* v. *Dooling,* 23 Ark. 582, the deed, when considered as a whole, must be considered as an executory contract to convey, and not as a deed of conveyance. The instrument under consideration in the case just cited was very much like the one we are now considering, the chief difference being that the deed in that case contained an *habendum* clause, but there was other language which tended to show that the parties did not intend it as a deed of conveyance. Chief Justice English, speaking for the court, said: ''Looking at the whole instrument, and deriving the intention of the parties from all of its provisions construed together (Sheppard's Touchstone, 87), we think it can be regarded as nothing more than a bond for title, or agreement to convey, on payment of the remainder of the purchase money, such instruments being in common use, in our system of conveyancing, where lands are sold upon credit, though it is not usual to find them so unskilfully drafted.''

(2-3) We will treat the instrument then as an executory contract to convey for so it is according to the doctrine of this court announced in *Kelly* v. *Dooling, supra.*

Now, the law is very well settled as to the respective rights of vendor and vendee in sales of land. "A purchaser of lands may," as is stated in a standard textbook on the subject, "so long as the contract remains unexecuted by a conveyance, as a general rule, recover back or detain the purpose money, if the title of the vendor be not such as the purchaser is, under the contract, entitled to require." Maupin on Marketable Title to Real Estate (2 ed.), 586. It is equally well settled in the law that a purchaser under an executory contract is entitled, before he is required to pay the price, to receive not only a good title, but one which is marketable. He is entitled to receive "not only a title that he can hold against all adverse comers, but one that he can hold without reasonable apprehension of its being assailed, and one that he can readily transfer, if he desires, in the market." *Tupy* v. *Kocourek*, 66 Ark. 433. This subject was thoroughly reviewed by Judge Battle in the case of *Griffith* v. *Maxfield*, 63 Ark. 548, where it was said, quoting from Sugden on Vendors, page 385, that under such circumstances "the title to the estate ought, like Caesar's wife, to be free from suspicion." We went over this subject thoroughly in the recent case of *Leroy* v. *Harwood*, 119 Ark. 418, and the rule on this subject so often announced by this court was adhered to.

(4-5)    There are no fixed rules for the determination of the question whether or not a title is a marketable one, as that has to be decided upon the facts of each case. The better view, according to the authorities, is, that title by adverse possession does not constitute marketable title which a purchaser is bound to accept. It must, in other words, be a clear record title in order to be "marketable" within the meaning of that term as ordinarily understood. It will be observed that the contract in this case provides that the vendor shall "make a warranty deed with complete abstract certified up to date." That language refers only to the abstract itself, and not to the quality of the title; but, aside from any particular language in the contract, there is an implied agreement, unless stipulated to the contrary, that the purchaser shall receive a market-

able title. Such is the undoubted effect of our decisions on the subject, which seem to be thoroughly in accord with the general trend of authorities.

(6) The facts must therefore be looked to in order to determine whether a marketable title was furnished in this case. Appellant says that the title was not marketable, whereas, appellees insist that the title is not only good, but is marketable. The action was instituted in chancery and tried there, and no question has been raised by the parties as to that being the proper forum. The case therefore comes to us for trial *de novo,* with the presumption in favor of the chancellor's finding upon every issue of fact unless it is found to be against the preponderance of the evidence. Nearly all of the lots—all but five full lots and four half lots—form a part of a tract of land which is referred to in the pleadings and proof as the Blair land. It was land entered from the Government by one Samuel Leslie, and the title was acquired through mesne conveyances by one Joseph Blair, the father of appellee Geo. T. Blair. The other lots formed a part of a tract of land which is designated in the pleadings and proof as the Leslie land. That tract was also owned by Samuel Leslie, and he remained the owner until the time of his death. Appellees claim title, under the heirs of Samuel Leslie. Now, the testimony establishes a perfect record title, which is a marketable title, as to the Blair land. That tract was set apart by decree of the chancery court to M. J. Blair, the tract so assigned being a portion of a certain forty-acre subdivision, and it is properly and accurately described in the decree by metes and bounds. It contains twenty-five acres. Appellees claim under a deed from M. J. Blair to J. E. Blair, in which the vendor merely described the tract as "all of my one-third interest in section 23, township 14 north, range 15 west;" but after the attorney who examined the abstract of title discovered this defect in the description and called attention to it, appellees procured a deed from M. J. Blair curing the defective description and containing a description by metes and bounds as set forth in the decree referred to above. We entertain no doubt, therefore, about the title

to the Blair land being perfect, and such as came up to the implied contract of the vendor to furnish.

(7) The title to those lots which are carved out of what is known as the Leslie tract stands in a different attitude with respect to its completeness. There were nine children of Samuel Leslie. Some of the children died, and appellee Geo. T. Blair purchased from some of the heirs' interests equal to nearly an undivided one-third of the whole tract. Each of the deeds contained the following description: ''All of our undivided one-third of one-ninth interest as heirs of Samuel Leslie, deceased, in the following described lands, situated in Searcy County, Arkansas, towit: Part of the northwest quarter of the northwest quarter of section 26, township 14 north, range 14 west.'' That was not a good description. *Adams* v. *Edgerton,* 48 Ark. 419; *Tatum* v. *Croom,* 60 Ark. 487. It is insisted that the word ''part'' in the description refers to the interest and not to the area conveyed. It might be a good description if that word could be so construed. The interest, however, is designated by the use of other language, and it is evident that the word ''part'' was used as descriptive of the area, and it is insufficient within the rule announced by this court in the above cited cases and others.

Two of the Leslie heirs bought the interests of the others, and in a partition suit brought by those two heirs against appellees, a certain part of the tract was allotted to the latter in severalty, and it was described by metes and bounds. Appellees have been in possession of that part (and it is the part out of which these lots were carved), and fenced the same and remained in possession until the sale to appellant. A perfect title by limitation was acquired by appellees as against all claimants who were *sui juris.* When this defect was pointed out, appellees procured deeds from three married women among the heirs, describing the land by metes and bounds, so it appears from the record that they have a perfect title by limitation. The defective description in the deeds of the Leslie heirs to appellees prevents the title from being a marketable one, and appellant was not compelled to ac-

cept it. Those lots formed a substantial portion of the purchase, and, unless a marketable title be furnished, the appellant can refuse to pay any more on the purchase and demand return of the amount already paid.

(8) That, however, does not necessarily mean that appellant has shown his right in this case to recover, for we think under the testimony his own conduct with respect to the transaction is such that he is not at this time entitled to demand a return of his money. The contract, it will be observed, provides for payment of the balance of the purchase price on January 10, 1913. On that date the parties by agreement changed the contract so as to make the balance of $8,000 payable in installments, one thousand dollars of which was paid by appellant at the time. It was understood at that time that appellees should proceed with the work of getting the abstract of title and perfecting the title, and the chancellor found, correctly, we think, that time was not of the essence of the performance of the contract. Appellees furnished an abstract of title which was submitted to an attorney by appellant for examination, and certain defects were pointed out. One of them was the defect in the description in the M. J. Blair deed, which was corrected at once by a new deed, as before stated. The other defect pointed out was that the three heirs of one of the Leslie children, who it is said was insane, were married women, and that the statute of limitation did not run against them. When that defect was called to the attention of appellee Geo. T. Blair, he at once had that corrected by procuring deeds from the three married women, describing the land correctly by metes and bounds. When this was done, Blair went back to appellant, for the purpose of closing the deal, and appellant, according to the testimony, refused to negotiate any further or to complete the purchase. It is evident that appellees were doing all that they could to fully comply with the undertaking to furnish a marketable title, and they did in fact cure all the defects which were specially called to their attention. If the other defects in regard to the description in the other deeds had been insisted upon, appellant would have been

in the attitude to demand that those defects be cured, but instead of doing that, he arbitrarily broke off the negotiations and declined to go further with the trade. Appellees still had the right, and have now the right, under the contract, to perfect the title so as to make it marketable.

We think the court erred, therefore, in decreeing a return of the thousand dollars, paid by appellant on the contract price. The court decided against appellant as to the $2,000 on the ground that that sum was paid for the purpose merely of getting the option, but we think the court was in error as to that, and that if appellant is entitled to recover anything at all, he should recover the full amount paid. The $2,000 paid at the time of the execution of the contract was a part of the purchase price, and if appellees have failed to comply with their contract by furnishing a marketable title, appellant would be entitled to recover everything he had paid. There is nothing in the contract which gives appellees any right to retain any part of the purchase money in the event that they fail to comply with their contract.

The decree is therefore reversed, with directions to dismiss the complaint for want of equity, unless appellant elects to complete the contract by tendering the purchase price, in which event appellees should be given a reasonable opportunity to perfect the title so as to make it marketable. If, then, the appellees fail to comply in that respect, appellant can assert his right for the return of the money.

The cause is therefore remanded for further proceedings, if necessary, in accordance with this opinion.