## SHELTON *v.* RATTERREE.

### Opinion delivered December 20, 1915.

1. SALE OF LAND—RIGHT OF PURCHASER—EXECUTORY CONTRACT—MARKETABLE TITLE.—The purchaser of land under an executory contract is entitled, before he is required to pay the price, to receive, not only a good title, but one which is marketable. He is entitled to receive not only a title that he can hold against all comers, but one that he can hold without reasonable apprehension of it being assailed, and one that he can readily transfer, if he desires, in the market.

2. TITLE—MARKETABLE TITLE—ADVERSE POSSESSION.—Title by adverse possession is not a marketable title.

3. SPECIFIC PERFORMANCE—UNMARKETABLE TITLE.—The purchaser of land under an executory contract, will not be required to take title, which he had a right to reject, because it was unmarketable, at the time he decided to reject it.

4.	SALE OF LAND—UNMARKETABLE TITLE—EXECUTORY CONTRACT—MEAS-
URE OF DAMAGE.—The purchaser of land under an executory contract
conditioned upon the approval of the title by a certain attorney, has
the right to take the title offered, relying upon the warranty
which would have been given, or to treat the title as having failed,
and refuse to accept it, and where the title did actually fail, the
measure of his recovery will be the purchase money paid by him,
and interest thereon from the date of payment.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau*, Chancellor; reversed.

*J. A. Comer* and *Mehaffy, Reid & Mehaffy*, for appellant.

1. Parties were bound by attorney's opinion. The understanding was, and the law implies, a marketable title. Bradshaw, the attorney, decided the title was *not* marketable. This was final unless fraud was shown. 48 Ark. 522; 17 L. R. A. 207; 96 S. W. 79; 36 Pac. 1039; 27 How. Pr. 327.

2. The title was not marketable. A title may be perfectly good and yet not be a marketable title. 85 Ark. 289; 63 *Id*. 549. Where a vendor agrees to furnish a satisfactory title, a marketable title, the vendee is not bound until such a title is furnished. 77 Ark. 305; 60 *Id*. 39; 51 *Id*. 333; 44 *Id*. 145; 44 *Id*. 192. A vendor must tender a perfect title if he so contracted. 24 Ark. 197; 21 *Id*. 235; 11 *Id*. 58; 7 *Id*. 153. The title was not a marketable one. 1 Devlin on Deeds, p. 2660, 2685. A marketable title is one that is free from reasonable doubt; one that a prudent person, with knowledge of all the facts would accept. 134 N. W. 640; 101 Pac. 506; 98 N. W. 724; 109 Pac. 998; 97 N. W. 365; 100 N. Y. Supp. 785; 84 S. W. 278; 60 Atl. 619; 115 Pac. 431, etc.

3. The court had no jurisdiction to decree specific performance. 56 Ark. 370; 5 *Id*. 9; 36 Cyc. 672.

*J. W. & J. W. House, Jr.*, for appellees.

1. Parties were not bound by the attorney's opinion.

2. The title was marketable. 74 Ark. 161; 140 Fed. 273; 128 N. Y. 636. Title by limitation and adverse possession is marketable. 132 Am. St. 1022, 26 S. E. 657;

63 Atl. 28; 59 Ga. 454; 37 N. E. 355; 32 N. W. 340; 6 S. W.
460; 7 *Id.* 25; 24 La. An. 452; 49 *Id.* 580; 21 So. 853. Title
by limitation and adverse possession is marketable.    63
Atl. 28; 59 Ga. 454; 120 Ark. 69; 179 S. W. 331; 119 Ark.
418; 37 N. E. 355; 32 N. W. 340; 6 S. W. 460; 7 *Id.* 25; 49
La. An. 580, etc.    As our Supreme Court has settled this
question it is useless to cite the 163 citations of the counsel
of appellee.    80 Ark. 82.

3.    The title was perfect.    96 Ark. 524; 118 Pac. 32;
96 Am. St. 536; 104 N. Y. L. 1095.

4.    The burden was on appellant to prove that the
title was unmarketable.    108 N. Y. Sup. 350; 123 App.
Div. 896; 33 Ill. App. Div. 134, 373; *Ib.* 461.    The fact
that an attorney gave an adverse opinion of this title does
not relieve appellant from specific performance.    28 Am.
St. 122, 127.

5.    The chancery court had jurisdiction.    Pom. Eq.
Jur., par. 745-17; 16 Ark. 340; 19 *Id.* 51; 40 *Id.* 382; 66 *Id.*
40.

6.    Demand for title must be made.    91 Cal. 606; 56
Pac. 28; 90 N. C. 248; 24 Pac. 257, etc.

7.    It is sufficient if plaintiff is able to make a good
title on the day of the decree.    90 N. C. 248; 24 Pac. 257;
38 Tex. 203; 69 *Id.* 70; etc.    Where there is a conveyance
delivered by one having a voidable title, the defect
may be cured after suit is brought for the purchase
money.    96 N. C. 444; 63 Conn. 109; 104 Mass. 407; 56
Tenn. (9 Heisk.) 95; 10 Gratt. 138; 18 Am. St. 507; 5
Am. St. 123; 5 Ark. 419; 38 *Id.* 58; 11 *Id.* 58.

SMITH, J.    Ratteree & Sons are real estate agents in
Little Rock, and as such had a contract with the owners
of certain lots in that city to negotiate a sale, and on the
15th of January, 1914, an agreement was reached with
appellant for the sale of the lots which form the subject-
matter of this litigation.    It was agreed that the Ratter-
rees should furnish an abstract showing a marketable
title to the lots, and an abstract was furnished.    The par-
ties differ as to their agreement in regard to the exami-
nation of this title, it being contended by appellant that
the understanding was that the title should be examined

by a lawyer agreed upon, and his opinion should be decisive of that question. Appellees deny that there was any such understanding, and say further that no such issue was raised by the pleadings. It was first agreed that the title should be examined by T. M. Mehaffy, but as he was absent from the city it was later agreed that the title should be examined by D. E. Bradshaw, these gentlemen being practicing attorneys in Little Rock.

Appellant knew that the Ratterrees were not the owners of the property, but he accepted their statement that the title was perfect and placed the lots in charge of the real estate firm of Faulkner & Pasterneck to sell upon commission, and this last named firm negotiated the sale of a number of these lots and earned certain commissions which were paid them by appellant. Bradshaw examined the title and in a letter addressed to appellant, but mailed to the Ratterrees, reported that the title was not merchantable. In this letter the objections to the title were set out, and it is insisted on appellees' part that these objections were not well taken. Upon receipt of this letter the Mr. Ratterree who had the matter in charge told appellant that he had the letter but did not state its contents further than to say that certain objections to the title had been made which he was engaged in straightening out. This report was satisfactorily to appellant at the time, and Faulkner & Pasterneck continued to make sales of the lots. Finally appellant demanded that he be given a title which Bradshaw would approve, or that his money be returned, and appellant testified that Bradshaw told him the title might not be perfected for an indefinite time and might possibly never be perfected. This statement is not denied. Appellant thereupon elected to treat the sale at an end and brought suit to recover the cash payment made by him and the commissions which he had paid Faulkner & Pasterneck.

The Citizens Investment & Security Company had loaned the owners of these lots certain sums of money and the legal title to the lots was outstanding in its name, and a suit was brought by Bradshaw in the name of this

company to quiet the title to the lots, this suit being intended to meet the objections raised in the opinion to the title.

Appellant testified that he knew nothing about this suit and did not authorize its institution, and there appears to be no question but that Bradshaw was acting for Ratterree in that proceeding.

When appellant brought suit to recover the purchase money advanced and the commissions which he had paid, the owners of the lots made themselves parties to the proceedings and moved for a transfer of the cause to equity where it might be consolidated with the suit to quiet the title, where, upon all apparent defects being cured, a decree for the specific performance of the contract of sale might be enforced. The cause was transferred to equity, where it proceeded regularly to a decree, which was rendered some time after the decree in the confirmation case had been rendered. So far as the confirmation decree is concerned it is said, on the one hand, that the title was good without it, while, on the other hand, it is insisted that the decree did not perfect it, inasmuch as it was a proceeding against certain unknown heirs, who were made parties by the publication of a warning order, and that the time allowed by the statute for persons so proceeded against to appear has not yet expired. It is also urged that the title was marketable through the adverse possession arising out of the continuous payment of taxes by the owners for a number of years.

(1) We are cited to a great many cases which discuss and define a marketable title, but we find no necessity to consult these cases, as this subject had been considered by this court in a number of cases. One of the latest of these is the case of *Mayes* v. *Blair,* 120 Ark. 69, 179 S. W. 331, in which case it was said:

"It is equally well settled in the law that the purchaser under an executory contract is entitled, before he is required to pay the price, to receive, not only a good title, but one which is marketable. He is entitled to receive 'not only a title that he can hold against all adverse comers, but one that he can hold without reasonable ap-

prehension of its being assailed, and one that he can readily transfer, if he desires, in the market'."

The subject was gone into thoroughly in the recent case of *Leroy* v. *Harwood,* 119 Ark. 418, 178 S. W. 427, and it would serve no useful purpose to further discuss that subject.

Learned counsel for appellees claim in their brief to have demonstrated that the title in question was, not only a good title, but was a marketable one, and the court below took that view of the case and decreed a specific performance of the contract and dismissed appellant's suit for the purchase money and damages as being without equity, and this appeal questions the correctness of that decision.

(2) We will not attempt to set out the objections made by Bradshaw to this title nor appellees' answer thereto. We are of the opinion that, even if it be conceded that the pleadings raised the issue of an agreement to arbitrate the title, or to abide the decision of Bradshaw on that subject, the proof is not sufficient to sustain those allegations. Nor do we agree with appellees' contention that the title in question was made marketable by adverse possession. Whatever may be the rule in other jurisdictions, it is settled by the decision in the case of *Mayes* v. *Blair, supra,* that title by adverse possession is not a marketable title.

(3) It may be said, however, that it now appears to be reasonably certain that no one can successfully assail the title held by the investment company in trust for the owners, this fact being made to appear, in part, by an exhaustive examination of certain probate records showing certain settlements and the receipts of the distributees of an estate concerned in this title. But we think it does not follow that the decree should be affirmed on that account. The effect of our decisions is that a purchaser under an executory contract of sale has the right to be assured, not only that no successful assault can be made against the title he is asked to take, but that there is no reasonable apprehension of its being assailed and it should be a title which he can readily transfer in the mar-

ket.   Here an attorney of established reputation disapproved the title and brought a suit to confirm it, and while that suit was prosecuted to a successful issue, it is not even yet impervious to the attack which under certain conditions could be made against it.   Under these circumstances, we do not think the facts now made to appear, viz., that Bradshaw's apprehensions were not well founded, and that his suit was an unnecessary one, avail to compel appellant to take a title which he had the right to reject at the time he made that decision.

(4)   It follows, therefore, that the decree must be reversed, but it does not follow that appellant should have judgment for the full amount shown to have been expended by him.   He had the right to take the title which was offered him and rely upon the warranty which would have been given, or he had the right to treat the title as having failed and to refuse to accept it.   And, according to appellant's own statement, the entire contract was conditioned upon the approval of the title by the examining attorney, and if appellant expected to be governed by this opinion he should have waited until the opinion had been secured before incurring the liabilities which he did incur under the contract for the resale of the lots.

Treating this title, for appellant's purposes, as having failed, the measure of his recovery will be the $250 purchase money paid by him and the interest thereon from the date of payment.   *Carvill* v. *Jacks,* 43 Ark. 450; *Alexander* v. *Bridgford,* 59 Ark. 210; *Collier* v. *Cowger,* 52 Ark. 322; *Dillahunty* v. *Ry.,* 59 Ark. 636; *Barnett* v. *Hughey,* 54 Ark. 195.

The decree will, therefore, be reversed with directions to set aside the decree for specific performance, and with further directions to render judgment against the Ratterrees for the purchase money paid and the interest thereon.