ELKINS v. JOHNSON.

Opinion delivered April 9, 1917.

EXCHANGE OF LAND—ACTION TO RESCIND—ABSENCE OF FRAUD.—In an action to rescind an exchange of land on the grounds of fraud, the plaintiff failed to show fraud on the part of the defendant in failing to perfect his title, and *held*, under the evidence, the defendant was entitled to a reasonable time in which to perfect the same.

Appeal from Washington Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

*McGill & Lindsey* and *Homer L. Pearson,* for appellant.

1. On the issue of fraud and misrepresentation, the court found the issues for appellant. Elkins substantially complied with his contract, and if in any particulars he failed, they were waived. Time was not of the essence of the contract. Elkins is now willing and offers to perform his contract and make his offer good. He should be permitted to do so. 36 Atl. 78; 115 N. W. 325. No damage is proven. The decree should be reversed and appellant given a chance to make his offer good by fulfilling his contract.

*Walker & Walker,* for appellee.

Elkins's deed is a nullity. He totally failed to comply with his contract. His offer comes too late. There was no waiver. It is out of his power to fulfill his contract. 103 Ark. 212 is not in point. The decree is correct.

McCULLOCH, C. J. This action involves a controversy between the plaintiff and defendant concerning an exchange of certain lands. The plaintiff, W. W. Johnson, owned a farm in Washington County, Arkansas, containing 204 acres, and defendant, H. D. Elkins, owned a farm in Texas County, Oklahoma, consisting of 520 acres, of which 360 acres were originally school lands sold by the State, and on which the State still held a lien for the sum of about $950. Each of the parties had crops on their respective farms, and also live stock and farming

implements, and they entered into a written contract on July 30, 1914, for the exchange of their respective properties. The contract recited an undertaking on the part of the plaintiff Johnson to "give a warranty deed and abstract showing the same to be free and clear from any and all incumbrances of whatsoever nature, except a $1,000 mortgage" to the mortgagee whose name is specified; and also contained a recital of the undertaking on the part of defendant Elkins to furnish a "warranty deed and abstract showing the above lands all free and clear of all incumbrances" except two mortgages, one in favor of the State of Oklahoma for the sum of $950, and the other for $1,100 in favor of a certain loan company. The contract did not specify the time within which the respective conveyances were to be executed and abstracts of title to be furnished, but it is undisputed that plaintiff Johnson was to have sufficient time to go to Oklahoma for the purpose of inspecting the lands to be conveyed by defendant. At that time the defendant was in Washington County and had inspected the property which he was to receive in the exchange, but plaintiff Johnson had not at that time seen the Oklahoma property. They afterward exchanged conveyances and each party took possession of the respective properties conveyed.

This action was begun in the Washington Chancery Court in November, 1914, by plaintiff Johnson to require a rescission of the bargain and a cancellation of the conveyance which he had made to the defendant of the Washington County property. The alleged grounds upon which relief was sought were, that defendant had pointed out to the plaintiff the wrong lines of the Oklahoma property, and that defendant had failed to properly transfer the school lands on which the State of Oklahoma had a lien. The defendant in his answer denied that he had made any misrepresentations, or that he had failed to execute and deliver a proper assignment of the certificate under which the school lands were held, but in his answer offered to execute a transfer of the certificate and pro-

cure through the proper department of the State of Oklahoma a new certificate to the plaintiff. The statement of the answer concerning the certificate covering the school lands reads as follows: "The defendant further answering, says that at the time said deed to the Arkansas lands was delivered to this defendant, he informed the plaintiff that he was ready and willing to assign the certificate as required by law, and surrender the same for cancellation and did so as alleged by the plaintiff when the plaintiff called on him for said certificate, and if said assignment and transfer of said certificate is not properly made, that this defendant stands ready, and does hereby now, in open court, to procure from the Government of the State of Oklahoma, a proper certificate and deliver the same to the plaintiff herein for said school lands as complained of by him."

Proof was taken concerning the alleged misrepresentations of the true boundary lines of the Oklahoma lands, but on final hearing of the cause the chancellor found against the plaintiff on that issue. The very decided preponderance of the testimony is that there were no misrepresentations in that regard, and it is not now insisted on behalf of plaintiff that the allegations on that ground are supported by the testimony. The only issue, therefore, in the case relates to the failure of the defendant to comply with the Oklahoma law with respect to the assignment of the State's certificate of the purchase of the school lands, and when the chancellor announced his decision on that issue, the defendant renewed his offer to procure a new certificate and also to cause the discharge of the mortgage recited in the contract, which was on the school lands as well as the other lands. This offer was rejected by the court, and the defendant has appealed from the decree cancelling the said deed executed by the plaintiff to him conveying the Washington County lands.

Defendant held the school lands under a certificate of purchase from the State, which had been issued to another party prior to that time, and which had been

properly transferred to the defendant with the approval of the State of Oklahoma. The certificate, which is exhibited in the record, contains many conditions which have no bearing on the present controversy, but it contains the following stipulation with reference to an assignment of rights thereunder: "The holder hereof shall have the right to transfer or assign all his rights, title and interest in and to said land and improvements, but no transfer or assignment thereof shall be valid or of any force or effect unless made in conformity with the rules and regulations of the commissioners of the land office of said State, and recorded in the office of said commissioners at the Capitol of said State."

The rules and regulations of the commissioner of the Oklahoma Land Office provide, among other things, as follows:

"No transfer will be valid or accepted unless made on the form printed on this certificate and filed with the department within thirty days after the execution thereof, and this certificate surrendered for cancellation." * * * "No transfer or mortgage will be valid or accepted when the vendor is indebted to the State on deferred payments or for taxes past due." * * *

"After the transfer is approved by the commissioner of the land office, and upon the payment of the next deferred payment with interest in full thereon, and upon surrendering of the certificate of purchase transferred, and upon the execution by the transferee of a new certificate of purchase not for the deferred payments, a new certificate of purchase will be issued and delivered to said transferee." * * *

"No transfer can be made or will be accepted if the land and improvements are covered by mortgage. Proper release of mortgage shall accompany transfer."

After the execution of the contract, which was done at Springdale, Arkansas, the plaintiff accompanied the defendant back to Oklahoma, and made a thorough inspection of the property he was to receive. They closed

the trade there, and the deeds were prepared and duly executed. Defendant was living on the Oklahoma lands and remained there several days after the execution of the deed. Plaintiff lived in the house with the defendant during the time he was inspecting the place, and until defendant left there to come to Arkansas to take possession of the Washington County property. The plaintiff contends that nothing was said to him about it being essential to procure a transfer of the certificate of purchase of the school lands with the approval of the State department, but we think that the decided preponderance of the testimony is against him on that issue. Three witnesses, who apparently have no interest in this controversy, testified that it was fully explained to the plaintiff that it would be necessary to transfer the certificate and obtain the approval of the Commissioner of State Lands in Oklahoma. One of those witnesses, the cashier of a bank in Oklahoma, before whom the deeds were acknowledged, does not appear to have had the slightest interest in the controversy, and his testimony is unimpeached. The plaintiff's testimony on that issue stands alone, and even he does not state with any certainty that he had no information on the subject of the requirements about transfers of certificates of school lands. He states in his testimony that he did not remember that the cashier of the bank or the other parties told him of those requirements.

Defendant's wife was in ill health at the time of these transactions, and when he came to Arkansas after consummating the exchange with plaintiff, he stopped at Bentonville, where he executed a transfer of the certificate to the school lands. He testified that his wife was extremely ill at that time, and that he got a notary public in Bentonville to take her acknowledgment notwithstanding her extreme ill health, but that her condition was so desperate at that time that he laid the certificate aside and forgot to mail it to the plaintiff. His wife died four or five days later, and defendant testified that there was nothing to recall to his mind the fact that he had not

mailed the certificate until November 14, which was more than sixty days after the date of its execution, and too late under the rules of the land department of Oklahoma to file without an extension of time being granted by the Commissioner. In sending the certificate of transfer to the plaintiff, defendant wrote him a letter in which he expressed his regret that the mistake had been made of not attending to it earlier. Plaintiff made no response at all, and did not make any request of the defendant to take steps to obtain the approval of the Commissioner of State Lands or to execute a new certificate of transfer.

The rules of the land department of Oklahoma require that the certificate must be presented for surrender and cancellation within thirty days after execution, but the officers of that State connected with the department testified that it was not uncommon for the time to be extended upon a sufficient cause being shown for the delay, or that a new certificate might be issued.

We think the chancery court erred in requiring a rescission of the bargain, and in cancelling the conveyance to the defendant. Time was not of the essence of the contract, and plaintiff did not suffer the slightest injury by the delay. In fact, he made no request for compliance with the contract with respect to the method of passing title to the Oklahoma lands, but he instituted this action and prosecuted it upon the groundless charge that there had been fraudulent misrepresentations with respect to the other lands. When the defendant came in with promptness and offered to comply strictly with the contract with respect to the school lands plaintiff still failed to accept that offer, but continued to prosecute the suit upon the other ground. The defendant not only made this offer in his answer, but renewed it at the end of the litigation when the plaintiff had exhausted his efforts to sustain his unfounded charge as to false representations. He not only did that, but he offered to discharge the mortgage on these lands which he was not under the contract required to do, for the contract recites that the deal was

made subject to the recited incumbrances on the several properties which were the subject-matter of the exchange. Under the principles announced by this court in *Evans* v. *Ozark Orchard Co.*, 103 Ark. 212, and *Mays* v. *Blair*, 120 Ark. 69, we think the chancery court ought to have allowed the defendant a reasonable time within which to procure the cancellation of the old certificate or the issuance of a new one to the plaintiff. Any other course in the matter would result in permitting the plaintiff to profit by his fruitless effort to establish a charge of fraud, which is unsupported by the evidence in the case, and this course permits a performance of the contract without injury to either party. The decree is, therefore, reversed and the cause is remanded with directions to the court to fix a reasonable time for the defendant to comply with his contract with respect to the transfer of the certificate to the school lands, and if that is done within the reasonable time prescribed, the plaintiff's complaint will be dismissed for want of equity. Otherwise, the deed to defendant will be cancelled.

HUMPHREYS, J., disqualified.