McWilliams *v.* Toups.

4-6301                                                  150 S. W. 2d 34

Opinion delivered April 7, 1941.

*George W. Dodd,* for appellant.

HOLT, J. May 27, 1940, J. D. Toups, appellee, sued B. W. McWilliams, appellant, to rescind a contract for the purchase of real property in the city of Fort Smith, Arkansas, and to recover the amount paid by him under the terms of the contract.

It is alleged in the complaint that on October 1, 1937, Toups entered into a written contract with McWilliams, under the terms of which, appellant sold to appellee lot 5, block 10, Hawthorne Addition to the city of Fort Smith, Arkansas, for a consideration of $800, of which $100 was paid in cash and the balance to be paid at the rate of $12 per month with 7 per cent. interest; that Toups agreed to keep the property insured in the amount of $700, to pay all taxes during the life of the contract; and "in the event of the said parties of the second part (Toups and wife) should fail to make six (6) monthly payments, as herein stated, then the said parties of the first part (McWilliams and wife) at their option may declare this contract null and void, and of no further force or effect, unless otherwise agreed upon in writing, and all payments made by the said parties of the second part to the said parties of the first part shall be forfeited to the said parties of the first part, as rents or damages, and for no other purpose, and the said parties of the first part shall be entitled to possession of the said property, without the due process of law, or costs, time being the essence of this contract"; that after all payments were made by Toups, appellant was to convey the property to Toups, "said conveyance to be a good and sufficient warranty deed, together with complete abstract of title."

It was further alleged that "defendant represented to plaintiff that he was the owner of said lot upon which there was a two-room residence. Plaintiff believing said representation to be true and relying thereon, executed said contract and paid defendant the said sum of $100 when said contract was executed, and made monthly payments thereon, amounting to $347, when he was informed that said residence was not on said lot, but on lot 5, block 3, Rector Addition to the city of Fort Smith, Arkansas,

which said last mentioned lot was not owned by the defendant at the time said contract was executed or now."

The contract was made a part of the complaint.

There was a prayer that the contract be rescinded, that Toups have judgment against McWilliams for $347, the amount alleged to have been paid appellant, and for costs.

Appellant demurred to this complaint, and upon its being overruled by the trial court, filed answer and cross-complaint denying every material allegation in the complaint, except the execution of the contract in question, and alleged that appellee, Toups, had breached the contract in that he had failed to keep the property insured, had not kept the taxes paid, and was in arrears for more than six months on his monthly payments.

He further alleged that at the time the Hawthorne Land Company sold him lot 5, block 10, Hawthorne Addition, the boundary lines of this lot were pointed out to him, that fresh stakes were at its four corners, that while these boundary lines and stakes included a fractional lot, described as lot 5, block 3, Rector Addition, which the Hawthorne Land Company also owned at the time, that the land company intended to convey to him, and he believed that he was purchasing all of lot 5, block 10, Hawthorne Addition, and all of lot 5, block 3, Rector Addition, the land within the boundaries so pointed out to him, and that said fractional lots together comprised the usual residence lot of 50 x 140 feet.

He further alleged that he has had adverse possession of both of these fractional lots for more than seven years, and that he has good title thereto by virtue of such adverse possession and his deed from the Hawthorne Land Company.

He further alleges that F. H. Allison claimed some interest in the property and asked that he be made a party defendant, and as defendant and cross-complainant below, appellant prayed that appellee's complaint be dismissed, that the quitclaim deed held by F. H. Allison be canceled and that appellant's title to said lots

be quieted in him, that appellee's contract for the purchase of said property, and all rights thereunder, be declared forfeited, that appellant be awarded possession of said property and that "in case the court shall not for any reason declare said contract forfeited, defendant be given judgment against the plaintiff for the balance due thereunder, and that same be declared a lien on said property and said lien foreclosed for the balance due this defendant, and said property sold under the orders of the court for the payment of said judgment."

F. H. Allison filed answer to appellant's cross-complaint, in which he asserted title to lot 5, block 3, Rector Addition, by virtue of a deed to him by A. M. Britton, who had purchased the property from the Hawthorne Land Company.

Appellee, Toups, also filed answer to appellant's cross-complaint denying every m a t e r i a l allegation therein.

The cause was heard before the court on July 2, 1940, and final decree entered September 19, 1940. The court found that on November 10, 1931, "the Hawthorne Land Company was the owner of lot 5, block 10, of Hawthorne Addition to the city of Fort Smith, Arkansas, and lot 5, block 3, Rector Place Addition to the city of Fort Smith; that both of said lots are fractional and adjoining, and both taken together comprise one residence lot 50 feet wide and about 140 feet deep . . . and that both together have the appearance of being one ordinary residence lot.

He further found "that on November 10, 1931, the defendant, McWilliams, purchased lot 5, block 10, Hawthorne Addition, from the said Hawthorne Land Company and received deed therefor, and when he purchased said property he believed that said lot 5, block 10, Hawthorne Addition, comprised the entire parcel of ground lying within the boundary lines of both of said lots; and he immediately went into possession of both of said lots, under claim of ownership, and right; and has since that time been in the actual . . . continuous . . . ad-

verse . . . possession of both lots; that believing himself to be the owner of the same, he built his house and garage upon the rear end of the parcel of ground on lot 5, block 3, Rector Place Addition; that he improved same, and that by reason of his adverse possession thereof for more than seven years, he has acquired the fee simple title of lot 5, block 3, Rector Place Addition, as against the Hawthorne Land Company and all other persons claiming by, through or under said company; that he acquired title in fee simple to said lot 5, block 10, Hawthorne Addition, by deed from the said Hawthorne Land Company.

". . . that on April 30, 1940, the said Hawthorne Land Company executed a quitclaim deed to A. M. Britton for said lot 5, block 3, Rector Place Addition to the city of Fort Smith, . . . and on May 3, 1940, Britton executed a quitclaim deed to said lot to the cross-defendant, F. H. Allison, who claims said property by reason thereof, said deed is recorded . . . ; that said deeds and the record thereof are void as to defendant McWilliams, and constitute clouds upon his title and should be canceled. Said F. H. Allison has no title to said property because the Hawthorne Land Company had no title to the property at the time it executed the deed to A. M. Britton and that cross-defendant, Allison, has no better title than said company and A. M. Britton had; that all right, title and claim of the said Hawthorne Land Company, A. M. Britton and F. H. Allison was barred by seven years adverse possession, and by estoppel and laches when said quitclaim deeds were executed; . . . that on October 1, 1937, defendant McWilliams and wife entered into a written contract with the plaintiff, J. D. Toups, and his wife, for the sale of said property to the Toups for a consideration of $800, $100 of which was paid in cash, and the balance of $700 was to be paid in monthly installments of $12 per month, beginning November 20, 1937, . . . Said Toups obligated themselves to pay taxes and assessments on the property and carry insurance in the sum of $700 for the protection of defendant McWilliams and his wife and that it is provided in said contract that title shall remain

with the McWilliams until all payments shall be made; and that in case of default in six monthly payments, the said McWilliams might declare the contract null and void and all payments should therefore be forfeited as rents or damages and that McWilliams should be entitled to possession of said property.

"The court further finds from said contract that McWilliams, upon compliance with said contract, obligated themselves to convey said property to the purchasers . . . , said conveyance 'to be a good and sufficient warranty deed together with complete abstract of title'; that by reason of the condition of the title the plaintiff, Toups, is entitled to a rescission of said contract of purchase and to recover all payments he has made thereunder, which the court finds to be $350; and to secure payment of same Toups is entitled to a lien on both of said lots. . . ."

The court took the matter of adjusting equities under advisement for further proof and after hearing proof as to rental value of the property and improvements made by Toups, allowed McWilliams an offset against plaintiff of two years' rent at $8 per month, less the value of improvements made by Toups, reducing Toups' recovery to $150.

The court canceled the deed from the Hawthorne Land Company to A. M. Britton and the deed from Britton to Allison, and decreed that the title to said lot is vested in McWilliams and quieted the title in him, and enjoined all other parties to the suit from setting up any claim of title as against McWilliams and those claiming under him.

The court further decreed that Toups is entitled to rescind the contract and to recover $150 from Mc-Williams, after adjustment of equities, and adjudged a lien against both lots for payment thereof and foreclosed said lien. He decreed immediate possession to McWilliams with writ of assistance therefor.

McWilliams has appealed from that part of the decree holding appellee entitled to rescission of the con-

tract and from the judgment in appellee's favor for $150 damages. F. H. Allison has not appealed.

Appellee has not favored us with a brief.

It is undisputed, on the record, that appellant on November 10, 1931, by deed from the Hawthorne Land Company, acquired title to lot 5, block 10, Hawthorne Addition to the city of Fort Smith, Arkansas. It is also undisputed that at the time of this conveyance to appellant, the Hawthorne Land Company owned fractional lot 5, block 3, Rector Place Addition to the city of Fort Smith, Arkansas, which lot, being fractional, adjoined the lot so conveyed, and when the two lots were taken together, comprised an ordinary city lot of 50 x 140 feet.

It is also clear that appellant on November 10, 1931, took possession of both lots, erected a two-room house and a small garage thereon, made other improvements, and has continued to hold this property adversely for more than seven years and had so held it for that period of time before the institution of this suit. By adverse possession of seven years, subsequent to November 10, 1931, appellant acquired good title to lot 5, block 3, Rector Place Addition, and the court was correct in so holding. Section 8918, Pope's Digest.

While appellant's title to lot 5, block 3, Rector Place Addition, *supra,* was not good as a record, or paper, title on October 1, 1937, when the contract to purchase was entered into, appellant's title to this lot ripened into a good title by seven years adverse possession on November 10, 1938. The contract obligates appellants, when appellee, Toups, complies with its terms, to convey the property to him, "said conveyance to be good and sufficient warranty deed, together with complete abstract of title."

While the contract to purchase called for a good title, and it was not such when the contract was made, we are of the view that it had become a good title by adverse possession when that question was raised.

This court held in *Hinton* v. *Martin,* 151 Ark. 343, 236 S. W. 267, that a marketable title need not be a clear

record title, but may be a title acquired by adverse possession. It was there said:

"It is the insistence of appellant that, when the contract is construed as a whole, it discloses an agreement to convey a merchantable title as shown by the abstract, and that, as the title tendered was not a perfect paper title, the attorneys exceeded their authority under the contract in approving the title as having been perfected by the adverse possession of the vendor.

"In other words, appellant contends that the examining attorneys ignored the rule announced by this court in the case of *Mays* v. *Blair*, 120 Ark. 69, 179 S. W. 331, and reaffirmed in the case of *Shelton* v. *Ratterree*, 121 Ark. 482, 181 S. W. 288, that under the contract the purchaser was entitled to a merchantable or marketable title, and that the title was not a marketable one, inasmuch as it depended on the adverse possession of the vendor. . . .

"In the case of *Mays* v. *Blair* we held that a title, to be marketable, must be a clear record title, and that title by adverse possession does not constitute a marketable title, which a purchaser under an executory contract is bound to accept. That doctrine was reaffirmed in the case of *Shelton* v. *Ratterree, supra,* where we refused to enforce the specific performance of a contract because the title tendered under the contract was not a title of record, but depended upon the adverse possession of the vendor. . . .

"This question has received our most careful attention, and a majority of the court have reached the conclusion that we were in error in holding that only a clear record title could be a 'marketable' title. The better reasoning, the weight of authority, and our own cases are to the contrary. . . .

"Notwithstanding the conclusion we h a v e now reached, that a title by adverse possession may be so clear and free from doubt as to be a 'marketable' title, and may therefore be the basis of a suit for specific performance of a contract to convey land; and that our holding in *Mays* v. *Blair* and in *Shelton* v. *Ratterree* to

the contrary is against the better reasoning and the greater weight of authority, we would not now depart from those two cases but for the fact that a majority of the court have also concluded that those cases do not follow our own cases of *Griffith* v. *Maxfield*, 63 Ark. 548, 39 S. W. 852, and *Tupy* v. *Kocourek*, 66 Ark. 433, 51 S. W. 69. . . .''

Appellee took possession of the property under the contract October 1, 1937, and remained in possession until September 19, 1940. The present suit was filed May 27, 1940. Appellee's possession under the terms of the contract was the possession of appellant. The lower court by its decree correctly found good title to be in appellant, but we think erred in holding that since appellant did not have record title at the time the contract was entered into appellee was entitled to rescind the contract.

We are also of the view that the preponderance of the testimony presented supports appellant's contention that the fair rental value of the property in question was not less than $10 per month. On this point appellant testified that the property had never rented for less than $10 per month and appellee admitted that while he was absent from the property he rented it furnished for $15 per month.

Mike Hofrichter, after having qualified as to knowledge of rental values, testified the fair rental value of the property to be $10 per month. J. Ross Young and Mr. Duff corroborated this testimony. Troy McNeil, a real estate man in the city of Fort Smith, of long experience, testified that $10 per month would be a fair rental value.

While appellee, and two witnesses introduced on his behalf, gave testimony tending to place the rental value at $7.50 to $8, as indicated, we think the preponderance of the testimony supports appellant's contention.

It is conceded that Toups occupied this property for 36 months. Its rental value during this time would amount to $360. It is undisputed that appellee paid $350 on the contract.

It is undisputed that appellee failed to maintain insurance on the property, failed to pay taxes and had failed to pay the monthly installments due under the contract for a period of more than six months.

For the errors indicated, the decree is reversed, and the cause remanded with directions to permit appellee to pay the balance of the purchase price with interest to appellant, if he so elects, in which event appellant is directed to execute warranty deed to appellee. Should appellee refuse to pay said balance due within sixty days from date this judgment becomes final, the court is directed to declare a lien on said property for the amount due on the purchase price and order public sale thereof to satisfy appellant's lien.

Each party to this litigation to pay his own costs in both courts.