## McCormick v. Daggett.

### Opinion delivered January 14, 1924.

1. VENDOR AND PURCHASER—DILIGENCE IN RESCINDING.—A purchaser of land who claims to have been deceived is required, as soon as he learns the truth, to disaffirm the contract with reasonable diligence, so that both parties may, as nearly as possible, be restored to their original positions; and if, after discovering the deceit, he conducts himself with reference to the transaction as though it were still subsisting and binding, he waives the right to rescission.

2. VENDOR AND PURCHASER—LOSS OF RIGHT TO RESCIND—RIGHT TO RECOUP.—It does not follow that, because a purchaser of land has lost his right to rescission for fraud by his lack of diligence in disaffirming the contract, he has no right to recoup for the damages caused by the deceit.

3. BILLS AND NOTES—ACCRUAL OF INTEREST.—The rule that, when the maker of a note has the option of having accrued interest added to the principal and to bear interest as such, no action can be brought for it until the principal becomes due, does not apply where the owner of a note has the option of demanding payment, and, if the payment is not made, the accrued interest becomes principal and bears the same rate of interest, but remains payable at the option of the owner, and the right to enforce payment of the accrued interest is not postponed until the principal debt matures.

4. BILLS AND NOTES—MATURITY.—In determining the maturity of a note, a contemporaneous trust deed executed as a part of the same transaction should be read along with the note, and the maturity of the note may be accelerated by a clause appearing only in the deed of trust.

5. MORTGAGES—ACCELERATION CLAUSE.—An acceleration clause in a deed of trust which matures the debt matures it for all purposes.

6. BILLS AND NOTES—ACCELERATION—NEGOTIABILITY.—A note loses none of its negotiable properties because its payment is or may be accelerated upon default in payment of any installment.

Appeal from Lee Chancery Court; *A. L. Hutchins,* Chancellor; judgment modified.

*Mann & McCulloch,* for appellant.

1. The suit was prematurely brought. The provision in the notes that interest, if not paid at maturity, should be added to the principal, and bear the same rate of interest, did not authorize suit for the interest until the principal of the notes matured. 7 Cyc. 864, § 16; 8 C. J., § 613; 67 Iowa 676, 25 N. W. 847.

2. The acceleration clause in the mortgage did not mature the notes for the purpose of personal judgments upon them, but, if at all, only for the purpose of foreclosing the mortgage. 7 Cyc. 860; 133 Mo. 323; 40 L. R. A. 154, 157; 19 L. R. A. 673; 42 Ohio St. 113; 103 U. S. 766-761; 26 Law. ed. 554-556. See also 161 Mo. 270, 61 S. W. 811; 155 Mo. App. 678, 135 S. W. 511; 36 Mo. 348; 32 Mo. 438; 83 Mo. App. 425; 81 *Id.* 169; 19 R. I.

149, 32 Atl. 305; 68 Kans. 612, 75 Pac. 1044; 69 Wash. 151, 124 Pac. 373; 63 Fla. 631; 94 Ore. 1.

3. The maturity of the notes, to render them negotiable, must be determined by the face of the notes, not by reference to the mortgage. If maturity may be determined by the mortgage, the notes lose their character of negotiability and render those transferred subject to the same defenses as are available between the original maker and payee. By our State negotiable instrument law, an instrument, to be negotiable, must be payable on demand or at a fixed and determined future time, and it is declared that, though the time may be uncertain, the event by which it is to be determined must be one that is certain to happen. There is nothing in the act which declares, or suggests, that collateral writings may be looked to for the purpose of changing any of the terms, but it is made clear that the instrument alone shall govern. See also 8 Corpus Juris, 113, § 206; Paton's Digest of Legal Opinion, 554, § 2443, issued by American Bankers' Association.

4. The decree denying rescission of the contract, or recoupment for fraud and deceit, was contrary to, and not supported by, the evidence. 11 Ark. 58; 33 Ark. 425; 71 Ark. 99; 99 Ark. 442; 47 Ark. 148; 30 Ark. 535.

*Daggett & Daggett*, for appellees.

1. On the proposition that the suit was prematurely brought, attention is called to the interest clause in each of the notes, viz: "Interest payable annually, and, if not paid when due, *to become principal and bear same rate of interest.*" Counsel are in error in stating that, in default, the interest would be *added to* the principal. 42 L. R. A. (N. S.) 108.

2. Appellant's counsel seem to overlook the fact that suit is brought on the vendor's lien retained in the deed from Bowen to McCormick, as well as on the deed of trust from the latter to the former, and that in the deed it is expressly stated that interest on the notes for deferred purchase money is *payable annually*; "and that, if either of said notes, or the interest thereon, be not

paid, as the same becomes payable, then, *at the option of the legal holder,* the whole of the said debt may be declared due and · payable." These contemporaneous writings are to be construed together. 28 Ark. 387; 44 S. ;W. (Tex.) 936; 66 Ark. 367; 61 S. W. (Tex.) 386; 46 L. R. A. (N. S.) 475-479; 59 N. W. (Neb.) 115; 27 N. W. (Iowa) 296; 94 Fed. 347; 28 Fed. 741.

3. Appellant was in no position to avail himself of the defense of fraudulent misrepresentations set up in his cross-complaint. He was advised of the alleged shortage in acreage, as well as of the other alleged fraudulent misrepresentations, and, by his own conduct in paying the obligations then matured, and in continuing to oper-. ate the plantation, taking no steps to rescind the contract or to recoup, he is estopped to complain. 2 Pomeroy, 3d ed., §§ 897, 916, 917; Pomeroy, Specific Performance, § 222; 46 Ark. 348; 1 Ann. Cases, 906; 24 Sup. Ct. Rep. 259; 59 Ark. 251; 140 Ark. 336; 142 Ark. 553.

4. Appellant's contention that the acceleration clause in the deed and deed of trust, if read into the notes, renders the time of payment uncertain, and therefore destroys their negotiability, is contrary to the decided weight of authority. 89 Ark. 132; 96 Ark. 105; 10 Sup. Ct. Rep. 999; 25 Ann. Cases 163; Ann. Cases, 1916-C, 499; *Id.,* 1914-A, 315.

5. On the question of rescission and recoupment, counsel in their argument overlook the most essential element, *scienter.* 47 Ark. 164. As to the contention to the effect that if, by payment of the matured obligation, and subsequent occupancy of the plantation, appellant was estopped from rescinding the contract, he would still be entitled to recoup damages for the alleged fraud, we submit that the issue is not one of rescission or recoupment, but solely *of a waiver of the right to rescind or recoup* for the alleged fraud. 77 Ark. 261; 85 Fed. 740; 52 L. R. A. 745.

SMITH, J. In 1919 Sam Bowen was the owner of a tract of land in Lee County, known as the Horseshoe Plantation. He owned and operated the plantation dur-

ing the years 1918 and 1919, having acquired it from J.
L. Hutton and F. G. Jones, of Memphis, who had purchased it from R. L. Hope in 1916.

In June, 1919, Bowen listed the land for sale with
Shelton & Ward, a real estate firm in Memphis, who
caused the land to be advertised for sale in the Memphis
papers, and the tract was described in the published
advertisement as containing 1,735 acres, of which 800
were in cultivation. A. L. McCormick, of Mississippi,
read the advertisement and became interested in the
proposition, and opened negotiations through the sales
agents which resulted in the purchase of the land, but,
before the deal was closed, McCormick visited the land
and spent a few hours riding over it, and, being satisfied with the appearance of the farm and the representations made concerning it, he contracted to buy the land,
including the growing crops, the live stock, and farming implements on the place, and the tenants' accounts.
For all this he agreed to pay $147,475.03, payable
$25,000 cash, $25,000 January 1, 1920, and $67,475.03 in
seven equal annual payments of $9,639.29 each, due
January 1 in the years 1921, 1922, 1923, 1924, 1925, 1926
and 1927, and bearing interest at the rate of six per cent.
per annum from date until paid, and it was recited in
each note, that "interest payable annually, and, if not
paid when due, to become principal and bear same rate
of interest."

A deed was executed on September 6, 1920, conveying the land and the other property traded for, which
recited that, in addition to the payments to be made in
cash, McCormick had assumed and agreed to pay $30,000
due the Southern Trust Company, of Little Rock, which
was evidenced by three notes of $10,000 each, of Sam
Bowen and wife, dated October 10, 1918, and due
November 1, 1925, with interest at six per cent., payable
annually, and, to secure the unpaid purchase money, a
vendor's lien was reserved in the deed from Bowen to
McCormick, and, in addition, McCormick executed a
deed of trust to C. E. Daggett, as trustee for Bowen.

The deed of trust was in usual form, and described the land and the personal property therein, and contained the following clause: "But, in the event of the failure of the party of the first part to pay said principal debt, together with interest thereon, or any part of either, when the same shall become due and payable according to the tenor, date and effect thereof, or in the event the said party of the first part fails or refuses to comply with any or all of the covenants, agreements or conditions of this instrument, then, at the option of the legal holder or holders of the indebtedness hereby secured, the whole of the said indebtedness hereby secured shall, without notice, become immediately due and payable, and the trustee shall take immediate possession of said real estate and personal property and proceed to sell the same, or any part thereof, to the highest bidder, for cash, at such time and place as may be designated."

Suit was filed October 14, 1921, to foreclose the deed of trust and to enforce the vendor's lien, and it was alleged in the complaint that McCormick had paid the note for $25,000 due January 1, 1920, and also the note for $9,639.29 which fell due January 1, 1921, and had also paid the interest accruing on all of said notes up to and including September 6, 1920, but that the interest on the remainder of the notes accruing from September 6, 1920, to September 6, 1921, amounting to $3,470.15, was past due and unpaid. It was alleged that, default having been made in the payment of this interest, the plaintiffs had elected, under their option so to do, to declare the whole of said indebtedness due and payable. It was also alleged that all the notes, except the notes due in 1926 and 1927, which were owned by Bowen, had been assigned for value to Jones and Hutton. There was an allegation that the interest due the Southern Trust Company was unpaid. It was also alleged that the land comprised a plantation of about 800 acres, and that arrangements would have to be made for its cultivation

prior to January 1, 1922, and there was a prayer for a receiver, and a receiver was appointed by consent.

There was a prayer for judgment against McCormick for the balance of purchase money, and the interest thereon, and that the judgment be declared a lien on the land, subject to the prior incumbrance to the trust company, and that the property be ordered sold.

McCormick filed an answer and cross-complaint, in which he admitted the execution of the notes sued on, and the deed of trust sought to be foreclosed, and he admitted that the interest due September 6, 1921, had not been paid. By way of cross-complaint, it was alleged that the sale of the land had been induced by reason of false and fraudulent representations in the following particulars: It was represented there were 800 acres in cultivation, whereas there were in fact less than 400. That it was represented the land was free from noxious grasses, when a considerable area was infested with coco grass. That the land was represented to be above overflow, when, as a matter of fact, it was subject to annual overflows from the St. Francis River. It was also alleged that a certain tract of land was falsely designated as being within the boundaries of the land conveyed. There was a prayer in the cross-complaint that the sale be rescinded on account of fraud, and McCormick executed and tendered a deed to the land. There was also a prayer that, if rescission were denied, judgment be rendered in McCormick's favor for the difference between the market value of the land as represented by Bowen and its actual value at the time of the sale, as shown by the testimony.

An answer to the cross-complaint denied that there was any fraud or misrepresentations.

Upon final hearing the court dismissed the cross-complaint as being without equity, and rendered judgment as prayed for in the complaint, from which is this appeal.

It is clear that McCormick is not now entitled to rescind the contract. One who claims to have been

deceived is required, as soon as he learns the truth, to disaffirm the contract with all reasonable diligence, so that both of the parties may, as nearly as possible, be restored to their original position. "He is not," says Pomeroy, "allowed to go on and derive all possible benefits from the transaction, and then claim to be relieved from his own obligations by a rescission or a refusal to perform on his own part. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations." Pomeroy's Equity Jurisprudence (4th ed.) vol. 2, § 897.

This doctrine finds expression and approval in a number of our own cases, and, among others, the following: *Fitzhugh* v. *Davis*, 46 Ark. 337; *Bowden* v. *Spellman*, 59 Ark. 251; *Kilgo* v. *Continental Casualty Co.*, 140 Ark. 336; *Fleming* v. *Harris*, 142 Ark. 553.

Appellant practically concedes, because of his delay, that he can not ask rescission on the ground only of misrepresentation in regard to the acreage, as he discovered, soon after taking over the land, the presence of the coco grass, and discovered, during the first year of his possession, the fact that the land was subject to overflow from the St. Francis River, and he made two crops after acquiring this knowledge, and he must necessarily have soon known of the shortage in the acreage of the cultivated land.

It does not follow, however, that, because there is no right of rescission, there is no right of recoupment. A leading case on the subject is that of *Matlock* v. *Reppy*, 47 Ark. 148. A syllabus in that case reads as follows: "To maintain an action for damages for false and fraudulent representations as to land sold, the vendee must prove: 1. That the fraud related to some matter of inducement in the making of the contract. 2. That it wrought injury to him. 3. That the relative position of the parties was such, and their means of information such, that he must necessarily be presumed to have

contracted upon the faith reposed in the statements of the vendor; and, 4. That he did rely upon them and had a right to rely upon them, in full belief of their truth. *Yeates* v. *Pryor*, 11 Ark. 58.''

We think these tests are met by the proof in the instant case, and especially is this true in regard to the deficiency in the cleared land. The testimony very clearly establishes the fact that the representation was made that there were 800 acres; indeed, the advertisement of sale so stated, and the complaint asking the appointment of a receiver to take charge of and to rent the land so alleged. It is now practically conceded that there are not to exceed 400 acres of cleared land, and, according to one survey, there is but little over 300 acres; but figures are submitted by counsel for appellee attempting to show that, even on the basis of 400 acres, appellant is entitled to no relief, because of the value of the other property included in the sale.

We have carefully considered this question, and, while it is difficult to say, with any feeling of certainty, just what recoupment should be allowed for the difference in value, we have decided that it at least equals the face of two of the notes given for purchase money, which notes were for $9,639.29 each.

Several interesting questions are raised by appellant. It is insisted, (1) that the suit was prematurely brought; (2) that the accelerating clause in the mortgage did not mature the notes for the purpose of personal judgment upon them, but, if at all, only for the purpose of foreclosure of the mortgage; (3) the maturity of the notes cannot be determined by a reference to the deed of trust, and, if so determined, their negotiability is destroyed, and they become subject to the same defenses as are available between the original maker and the payee.

Upon the question of the suit having been prematurely brought, authorities are cited to the effect that, when the maker of a note has the option of having accrued interest added to the principal and to bear

interest as such, no action can be brought for it until the principal becomes due. But here the maker of the note has no option, and it is not provided that accrued interest shall be added to the principal. The owner of the note has the option of demanding payment, and, if payment is not made, the accrued interest becomes principal and bears the same rate of interest, but it remains payable at the option of the owner, and the right to enforce payment of this accrued interest is not postponed until the principal debt matures because the accrued interest becomes principal and bears interest.

In addition to the clause in regard to acceleration of payment copied from the deed of trust above, there was a clause in the deed from Bowen to appellant which reads as follows: "It is expressly agreed and understood that a vendor's lien is hereby retained by the grantors herein on the lands herein described, for the purpose of securing the remainder of the purchase money due on said lands, as hereinbefore set out, and that, if either of said notes, or the interest thereon, be not paid, as the same matures and becomes payable, then, at the option of the legal holder, the whole of the said debt may be declared due and payable."

It is familiar law that these contemporaneous writings, which were executed as a part of the same transaction, are to be read together to interpret the contract of the parties; and, when they are so read, we think it was the clear purpose of the parties to make the entire debt payable upon default in payment of any part thereof, either of principal or interest.

It is true the acceleration clause does not appear in the notes themselves; but it does appear in the deed of trust and in the deed, and, as we have said, these instruments are all to be read together.

In *Fairbairn* v. *Bofahl*, 144 Ark. 313, the attempt to accelerate the payment of certain notes was resisted upon the ground that the acceleration clause appeared only in the contract of sale, and did not appear in any of the notes. The opinion cited the case of *Farnsworth* v.

*Hoover,* 66 Ark. 367, where the acceleration clause was in the notes but not in the mortgage. The acceleration clause was enforced in both of the cases, the effect of the two cases being to make the acceleration clause valid and enforceable if it appears in either the notes or the deed, or deed of trust.

In this connection, it may be pointed out that the deed in which the vendor's lien was reserved does not contain any provision as to the manner in which Bowen should proceed to collect or enforce the maturing obligations; and, if the accelerating clause did not mature the entire indebtedness upon default being made, it is difficult to see just what meaning can be given it.

The point stated was considered by the Supreme Court of Washington in the case of *Castor* v. *Muramoto,* 69 Wash. 145, 125 Pac. 153, 42 L. R. A. (N. S.) 108, and the court said: ''If respondent's contention be true, this last provision of the mortgage is meaningless, since the only time the mortgage would be subject to foreclosure, irrespective of prior defaults in the payment of interest, would be a default in the payment of the original and the increased principal with the last annual interest at the maturity of the note, when, under all theories, all sums payable under the note and mortgage were subject to default for nonpayment. What need, then, for stipulating that, in case of a foreclosure, 'the whole of said principal and interest, whether the same shall be then due or not,' shall be retained? If the only foreclosure can take place subsequent to the maturity of the note, what sum is it, not then due, that is to be retained in case of a sale because of a default in the payment of principal or interest? Manifestly such a clause in this mortgage is indicative of the intention of the parties that the mortgage did stipulate for its foreclosure prior to the maturity of the note, in case of any default in the payment of the annual interest, as such a foreclosure could be the only one when the whole of the principal and interest would not be due, which situation is further illus-

trated by describing the note as one in which the interest is payable annually."

The case of *Clark* v. *Paddock,* 132 Pac. 795, is extensively annotated in 46 L. R. A. (N. S.) 475. The annotator, in his note, says: "Upon the weight of authority a clause only in the mortgage providing that the debt shall become due upon a contingency therein set forth will mature the note, although it be not due by its terms."

Many of the cases cited in the annotator's note have been examined, and we have concluded that the better rule, as well as the weight of authority, is that an acceleration clause which matures the debt, matures it for all purposes.

We are also of the opinion that the note loses none of its attributes as a negotiable instrument, because its payment is, or may be, accelerated by the recitals of the instrument securing its payment. The argument is that the acceleration clause in the deed and in the deed of trust, if read into the note, renders the time of payment, and consequently the amount to be paid, uncertain, and thereby destroys the quality of the note as a negotiable instrument. The weight of authority appears, however, to be against this view, although the authorities are divided.

But the negotiable instruments law, which has been adopted in this State, appears to settle this question. Section 1 of this act (which is § 7767, C. & M. Digest) defines the requirements of negotiable instruments, the second of which is that the instrument must contain an unconditional promise or order to pay a sum certain in money, and the third that it must be payable on demand, or at a fixed or determinable future time. Section 2 of this negotiable instruments act (which is § 7768, C. & M. Digest) defines the conditions under which the sum payable is a sum certain, the third of which reads as follows: "(3). By stated installments with a provision that, upon default in payment of any installment or of interest, the whole shall become due."

Thus it appears that· sanction is given in the negotiable instruments act to the acceleration of payment, and that negotiability is not thereby destroyed. *Thorpe v. Mindeman*, 68 L. R. A. 146.

However, as we are allowing credit by way of recoupment to the extent only of two notes, and as there are two notes which are owned by Bowen, the relief to which appellant is entitled may be granted by canceling these two notes as being without consideration, and that relief will be granted.

It is therefore ordered that the decree of the court below be modified by crediting thereon the amount of two notes held and owned by Bowen, the same being the notes which mature in 1926 and 1927, and in all other respects the decree will be affirmed.